UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE B. HENDERSON, SR.

and

TERRELL MANUEL,

and

DAWN M. ROSALES,

and

KELVIN M. THOMAS,

and

CHARLES E. WHITE,

on behalf of themselves and
all others similarly situated,

        Plaintiffs,

v.                         Civil Action No.: 3:14-cv-00221-REP

FIRST ADVANTAGE BACKGROUND
SERVICES, CORP.

        Defendant.

## FIRST AMENDED CLASS COMPLAINT

COME NOW the Plaintiffs, Tyrone B. Henderson, Sr., Terrell Manuel, Dawn. M. Rosales,

Kelvin M. Thomas and Charles E. White, on behalf of themselves and all others similarly situated,

and for their First Amended Class Complaint, state as follows:

### INTRODUCTION

1.      Tyrone B. Henderson, Sr. (hereinafter "Henderson"), Terrell Manuel  (hereinafter

"Manuel") , Dawn M. Rosales (hereinafter "Rosales"), Kelvin M. Thomas (hereinafter "Thomas")

and Charles E. White (hereinafter "White") bring this class action against Defendant to obtain relief for themselves and the class they propose to represent for violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.

2. First Advantage Background Services Corp. (hereinafter "First Advantage") operates as a consumer reporting agency that compiles and maintains files on consumers. It then furnishes this information to various customers who access the First Advantage reports to determine whether or not to hire a prospective employee.

3. Henderson, Thomas and White wrote to First Advantage and requested a copy of their complete file. They also filed a dispute with regard to incorrect information that they feared might be in their respective consumer files maintained by Defendant.

4. Manuel and Rosales wrote to First Advantage and requested a copy of their complete consumer file and disputed specific incorrect information that they knew Defendant had reported about them to prospective employers.

5. Manuel and Rosales allege individual claims under 15 U.S.C. § 168le(b), which required that First Advantage use "reasonable procedures to assure maximum possible accuracy" in the publication of their consumer reports.

6. Plaintiffs bring a class claim under 15 U.S.C. § 1681g. Plaintiffs requested their consumer disclosures from Defendant and a list of all inquiries made to Defendant for their reports. When Defendant did respond, it did not provide a written summary of rights. Defendant did not reveal the inquiries for reports it sells to third party reseller agencies. Defendant did not provide a statement that the consumer may have additional rights under State law. Defendant did not provide a statement that a consumer reporting agency is not required to remove accurate derogatory

information from the file of a consumer unless the information is outdated or cannot be verified. Also, Defendant did not provide a copy of the entire consumer file as requested.

7. Manuel, Thomas and Rosales allege a class claim under 15 U.S.C. § 1681i(a)(1)(A), which requires that Defendant initiate a reinvestigation of its consumer file as soon as it is contacted directly by a consumer conveying a dispute. Defendant required Thomas to submit a copy of his driver's license before it would proceed with the dispute even when he had already provided in writing his full name, social security number and date of birth. Defendant required Manuel, who had contacted Defendant by telephone, to complete Defendant's proprietary forms and submit the dispute in writing before it would begin to process his dispute. Rosales was also required to complete proprietary forms before Defendant would begin to process her dispute.

8. Manuel and Rosales allege a claim under 15 U.S.C. § 1681i(a)(2) for Defendant's failure in response to their disputes to notify the vendor or other person who provided the information in dispute to Defendant.

9. Manuel, Rosales and White also allege a class claim under 15 U.S.C. § 1681k because Defendant did not provide them and other similarly situated consumers timely and lawful notice that it was furnishing an employment purposed consumer report containing negative public record data at the time it did so.

10. This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the reporting agency to obtain and as appropriate correct information in the furnished report. It also was intended to alert the consumer to the employer's use of the report to provide them the opportunity to address any concerns or derogatory history in the report directly with the employer.

## JURISDICTION AND VENUE

11.    The Court has jurisdiction under the FCRA, 15 U.S.C. § 168lp and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 139l(b) as the Defendant regularly does business in the district and division. Defendant also maintains its registered agent for service of process in this district and division. The events as to three of the five named Plaintiffs occurred in the City of Richmond.

12.    Thomas is a Plaintiff in a suit pending in this District and Division before the Honorable Robert E. Payne, *Henderson, et al v. Backgroundchecks.com*, Civil Action No.: 3:13cv29.

13.    Backgroundchecks.com provided an incorrect background check to a prospective employer of Thomas, and that caused Thomas to inquire of Defendant about what, if any, background checks Defendant had provided to his prospective employers.

14.    Henderson is a Plaintiff in a number of suits pending in this Court, including *Henderson, et al v. CoreLogic, Inc.*, Civil Action No.: 3:12cv97; *Henderson, et al v. Acxiom Risk Mitigation, Inc.*, et al, Civil Action No.: 3:12cv589; *Henderson, et al v. Backgroundchecks.com*, Civil Action No.: 3:13cv29; *Henderson, et al v. InfoMart, Inc.*, Civil Action No.: 3:13cv578.

15.    Henderson knew that a number of consumer reporting agencies had incorrectly attributed a criminal record to him and, accordingly, he filed the lawsuits itemized above, among others.

16.    Henderson contacted Defendant to request a copy of his consumer report to check for errors.

17.    Henderson, Manuel and Thomas reside in Richmond, Virginia and maintain all of the documents relevant to this dispute at their homes in Richmond, Virginia.

18.     Rosales resides in Hialeah, Florida and maintains all of the documents relevant to this dispute at her home in Hialeah, Florida.

19.     White resides in Chandler, Arizona and maintains all of the documents relevant to this dispute at his home in Chandler, Arizona.

20.     Defendant maintains all the documents relevant to this dispute electronically. As such, it can access them in Richmond, Virginia.

## PARTIES

21.     Henderson, Manuel, Rosales, Thomas and White are "consumers" as that term is defined in the FCRA.

22.     First Advantage is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia.

23.     First Advantage completes over 18 million background screenings annually including executive screening, volunteer screening and small, medium and large size business service.

24.     Defendant serves thousands of customers nationwide, from small businesses to Fortune 100 companies, by providing comprehensive screening services.

25.     According to Defendant, as one of the largest screening providers in the world, First Advantage has offices in 26 locations worldwide, and is well known for its expertise in global data usage.

26.     Defendant is, "a consumer reporting agency which [for the purpose of furnishing consumer reports] for employment purposes [...] compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment[.]" 15 U.S.C. § 1681k(a).

5

27.     First Advantage is not related by common ownership or affiliated by corporate control with Wells Fargo.

28.     The Manuel and White consumer reports were provided by First Advantage to Wells Fargo, not communicated among persons related by common ownership or affiliated by corporate control.

29.     The Manuel and White consumer reports were obtained from Defendant by Wells Fargo as a routine consumer report for employment purposes as opposed to in connection with suspected misconduct relating to employment or compliance with Federal, State or local laws and regulations, the rules of a self-regulatory organization, or any pre-existing written policies of the employer.

### FACTS AS TO HENDERSON

30.     Henderson had suffered a series of rejections for employment based on inaccurate background checks furnished by multiple consumer reporting agencies.  He had sought legal advice, disputed those reports and even commenced litigation about them.  Nevertheless, new reports continued to surface showing the inclusion of felony records for an out of state stranger with a similar name.

31.     As a result, Henderson attempted to determine and dispute the content of his consumer file with each database that he discovered warehoused and sold criminal background checks.

32.     Henderson wrote to Defendant and requested a copy of his full consumer file, including a list of all companies who requested or received his consumer report.

33.     In addition, in that same correspondence, Henderson disputed inaccurate information (the inaccurate attribution of a Pennsylvania felony conviction of a similarly named stranger) that he believed Defendant maintained in its file.

34.     Neither Defendant nor anybody on behalf of Defendant replied to Henderson's letter which was sent by regular and certified mail.

35.     Defendant did not provide Henderson a copy of his consumer file.

36.     It is Defendant's policy to refuse to provide a consumer disclosure pursuant to 15 U.S.C. § 1681g(a) if it has not previously furnished a consumer report regarding that consumer to a third party.

## FACTS AS TO MANUEL

37.     In February 2012 Manuel applied for a job as a banker with Wells Fargo.

38.     Wells Fargo purchased a background check on Manuel from First Advantage, for an employment purpose.

39.     On February 9, 2012 Manuel interviewed with a Wells Fargo recruiter.

40.     The following week Manuel interviewed with an individual at a branch of Defendant.

41.     On February 24, 2012 Wells Fargo offered Manuel a position at the branch where he had his immediately preceding interview.

42.     Defendant provided Manuel with an offer letter dated February 24, 2012 and asked him to sign and return it if he was interested in the position.

43.     Manuel signed the offer letter on February 27, 2012 and immediately returned it to Wells Fargo.

44.    Defendant's representative informed Manuel that he would start employment March 13, 2012.

45.    Upon information and belief, Wells Fargo ordered a consumer report on Manuel from Defendant on February 27, 2012.

46.    As March 13, 2012 approached, Manuel still did not know exactly where to report for work at Defendant, nor had he signed any additional employment related papers.

47.    Manuel sent emails to his contacts at Wells Fargo and its recruiter to no avail.

48.    Later, Manuel called the Wells Fargo recruiter, and she informed Manuel that they were waiting on the results of Manuel's background report.

49.    The recruiter also informed Manuel that she could not talk about his background report results with him.

50.    The recruiter referred Manuel to Defendant.

51.    Manuel called Defendant and was told that Defendant was waiting for additional information.

52.    Upon information and belief, Defendant completed the consumer report April 2, 2012 and immediately conveyed the information in the report to Wells Fargo.

53.    On or about April 2, 2012 the recruiter for Wells Fargo told Manuel that the report had been completed and the result disqualified Manuel for employment at Wells Fargo.

54.    Later in April Manuel received a copy of a "pre-adverse action notification" and a copy of his consumer report from either Wells Fargo or First Advantage .

55.    The letter was dated April 3, 2012, but Manuel does not know when the sender put the letter in the mail.

56. The consumer report contained Manuel's alleged criminal history, not information solely as to transactions or experiences between Manuel and First Advantage or Wells Fargo.

57. The report provided by First Advantage contained numerous material errors.

58. Specifically, it contained charges for another individual involving terroristic threats, theft, possession of burglar's tools, and threaten to kill/domestic violence.

59. In creating and furnishing Manuel's consumer report, Defendant failed to follow reasonable procedures to ensure the report was as accurate as maximally possible.

60. For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Manuel's consumer report.

61. In response to Manuel's request for a copy of his file, Defendant did not respond or provide any documents.

62. Defendant failed to provide Manuel with a letter or any other communication "at the time" his consumer report was furnished by Defendant to Wells Fargo.

63. Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon his ability to obtain or maintain employment, Defendant failed to provide notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person to whom such information was being reported.

64. Upon information and belief, Defendant did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court Clerk)

immediately before furnishing a report which includes such information. Title 15 U.S.C. §1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

65.     Later in April Manuel contacted Defendant to dispute the consumer report provided by Defendant to Wells Fargo.

66.     First Advantage refused to process the dispute until Manuel completed Defendant's proprietary form entitled "Notice of Consumer Dispute" and an "Authorization for Reinvestigation of Consumer Dispute."

67.     Manuel signed, completed and forwarded those forms to First Advantage, but First Advantage never, as far as Manuel knows, corrected the report or responded.

## FACTS AS TO ROSALES

68.     In January 2013 Rosales applied for a job as a pharmacist with CVS.

69.     CVS purchased a consumer report on Rosales from First Advantage for an employment purpose.

70.     On February 8, 2013 CVS offered Rosales a job.

71.     Rosales in turn resigned her current employment to accept the position with CVS.

72.     On February 25, 2013 CVS telephoned Rosales and asked if she failed to disclose information on her application. Rosales said "no".

73.      CVS informed Rosales that there was a "hit" on her background report, and that CVS would no longer hire her.

74.     Rosales explained that there should be no such "hit" on her report, but CVS nevertheless failed to hire her.

75.     On or about February 26, 2013 CVS informed Rosales that it had a "summary" of her report provided by First Advantage and that she had failed a Fraud and Abuse (FACIS) inquiry provided to First Advantage by another consumer reporting agency.

76.     Neither Defendant nor CVS provided a copy of the consumer report to Rosales.

77.     Neither Defendant nor CVS provided Rosales with a written summary of her FCRA rights.

78.     Rosales contacted First Advantage to inquire about the contents of her report.

79.     First Advantage declined to provide Rosales with any specific information. It directed her to see a copy of the report through its website, which Rosales did the same day.

80.     Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon his ability to obtain or maintain employment, Defendant failed to provide notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person to whom such information was being reported.

81.     Upon information and belief, First Advantage did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court Clerk) immediately before furnishing a report which includes such information. Title 15 U.S.C. §1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

82.     Rosales received a copy of the consumer report on February 28, 2013.

83.     The FACIS portion of the report contained information regarding an individual named Dawn Michelle Johnson, who had a derogatory employment citation issued by the Florida Department of Health.

11

84.     In creating and furnishing Rosales' consumer report, Defendant failed to follow reasonable procedures to ensure the report was as accurate as maximally possible.

85.     For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Rosales' consumer report.

86.     Other than sharing Rosales' first, middle and maiden name, there were no matching criteria (address, date of birth, social security number, etc.) which would reasonably link Rosales to Johnson.

87.     Rosales filed a written request with First Advantage to obtain a copy of her file.

88.     The materials forwarded in response by First Advantage to Rosales failed to inform her that a consumer reporting agency is not required to remove accurate derogatory information from the file of the consumer, unless the information is outdated under 1681c or cannot be verified in violation of 15 U.S.C. §1681g(c)(2)(E).

89.     Upon receipt of the consumer report, Rosales also filed a dispute and initiated a reinvestigation with First Advantage.

90.     First Advantage refused to process the written dispute until Rosales completed First Advantage's proprietary forms in violation of 15 U.S.C. §1681i.

### FACTS AS TO THOMAS

91.     In 2008, Thomas applied and was hired by Cableview Communications.

92.     Thomas applied for a job with Cableview to cover its territory in and about the Richmond, Virginia geographic area.

93.     Thomas may have authorized a background report.

94.     In the fall of 2011, Cableview decided to sells its operation to FTS.

12

95.     Cableview and FTS collectively ordered a background report on Thomas from Backgroundchecks.com on September 30, 2011.

96.     The background report contained numerous felony convictions for another individual.

97.     Based on the results of the background report, Cableview declined to retain Thomas and FTS declined to hire him.

98.     This led Thomas to question what other background check companies might report on him as he returned to the job market.

99.     On or about December 4, 2014, Thomas sent a letter to First Advantage requesting a copy of his entire file and disputing any inaccurate information therein.

100.     The First Advantage response failed to provide any of the information required § 1681g(c)(2), except Defendant's toll-free number.

## FACTS AS TO WHITE

101.     White was hired by Wells Fargo and worked there for four years before being transferred to the mortgage department.

102.     In connection with the transfer he submitted his fingerprints and First Advantage prepared a consumer report on him.

103.     The consumer report revealed a class six misdemeanor which caused him to not only be turned down for the new position, but to be discharged from Wells Fargo effective March 21, 2002.

104.     At no time did either Wells Fargo or First Advantage provide White with a copy of the consumer report, so he is unsure whether it was accurate or not.

13

105.    White was informed that he would not get the position before he received any written correspondence from either Wells Fargo or First Advantage.

106.    Neither Defendant nor Wells Fargo ever provided White with a copy of his consumer report or a written summary of his FCRA rights.

107.    White requested a copy of his consumer file and filed a dispute with Defendant, but Defendant failed to respond.

## WILLFULNESS ALLEGATIONS

108.    First Advantage knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

109.    First Advantage obtained or had available substantial written materials that apprised it of its duties under the FCRA.

110.    Despite knowing of these legal obligations, First Advantage acted consciously in breaching its known duties and deprived Plaintiffs and other members of the Classes of their rights under the FCRA.

111.    First Advantage's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

112.    The conduct, action, and inaction of Defendant was reckless, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

113.    In the alternative, the conduct, action, and inaction of Defendant was negligent, rendering Defendant liable pursuant to 15 U.S.C. § 1681o, with a separate trial for actual damages if established.

114.     Plaintiffs and other members of the putative class and subclasses are entitled to recover costs and attorney's fees, as well as appropriate injunctive and declaratory relief from Defendant, in a manner and an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## ALLEGATIONS COMMON TO EACH CLASS CLAIM

115.     **Numerosity.**  FED. R. CIV. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.   The names and addresses of members of the Class are identifiable through   documents maintained by Defendant and members of the Class may be notified  of the pendency  of this action  by published and/or mailed notice.

116.     **Existence and Predominance of Common Questions of Law and Fact.** Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.

These common legal and factual questions include, among other things:

a.     whether First Advantage uses reasonable procedures to assure maximum possible accuracy in the publication of consumer reports;

b.      whether First Advantage's inclusion of non-fraud/dishonesty incidents in its reports is maximally accurate and complete;

c.     whether First Advantage indeed provides consumers with all of the information it possesses about them when they request  their First Advantage file;

d.     whether First Advantage, when it responds to a request for a file or a dispute, provides all the information required by section 1681g;

e.      whether First Advantage requires consumers to submit a copy of their driver's license before proceeding with a dispute;

f.      whether First Advantage requires consumers who contact them by telephone to complete disputes on proprietary forms and submit them in writing before beginning the dispute process;

g.      whether First Advantage provides consumers with timely and lawful notice that it furnished an employment purposed consumer report containing negative public record data at the time it did so;

h.      whether First Advantage maintains strict procedures to ensure that adverse public record information being reported is complete and up-to-date;

i.      whether First Advantage provides the current public record-status of adverse public record information at the time its report is provided;

j.      whether in response to disputes First Advantage notifies the vendor or other person who provided the information in dispute about the dispute;

k.      whether each of these violations of the FCRA were willful;

l.      what amount of statutory and punitive damages is appropriate for this alleged violation of the FCRA.

m.      Whether First Advantage recklessly, knowingly or intentionally acted in conscious disregard of the rights of the consumer.

n.      Whether Plaintiffs' claims are typical of the claims of each class member.

o.      Whether Plaintiffs are adequate representatives of the class.

p.      Whether questions of law and fact common to class members predominate over questions affecting only individual members.

q.      Whether the class members could afford individual litigation.

r.      Whether individual litigation would be an unnecessary burden on the Courts.

s.      Whether individual litigation would present a potential for inconsistent or contradictory judgments.

t.      Whether individual litigation would increase the delay and expense to all parties.

117.   **Typicality**. FED. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.   Without limitation, the procedures of Defendant were uniform and systemic. The reports obtained and used regarding Plaintiffs and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

118.   **Adequacy**. FED. R. Clv. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

119.   **Superiority**. FED. R. Clv. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.   The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendants has violated the FCRA, very few Class members-and almost none who are unrepresented by counsel-will ever know that they have been subject to a First Advantage report.   Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.   By contrast, the class action

device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

**CLAIMS FOR RELIEF**
**Count I- Violation of 15 U.S.C. § 1681g(a)**
**(All Plaintiffs)**

120.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

121.    Plaintiff Manuel brings this action on behalf of the following class, of which he is a member:

> All persons residing in the United State of America and its Territories (a) who requested their consumer file from First Advantage, (b) within five years preceding the filing of this Complaint and continuing through the conclusion of this action, and (c) in response First Advantage failed to provide a copy of the complete file. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

122.    The FCRA obligates CRAs like First Advantage to furnish to a requesting consumer "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a).

123.    In addition to the employment-related information that First Advantage provides third parties, First Advantage collects and maintains a trove of additional information regarding consumers such as income, financial data, buying activity, purchase histories, home purchases, births, marriages, divorces, and other demographic data, to name a few examples.   It also contains greater detail or documentary information regarding each "Incident"   it will thereafter report, including the actual documentation provided to First Advantage by its furnisher-subscribers.

**Count II – Violation of 15 U.S.C. § 1681g(c)(2)**
**(Plaintiff Thomas)**

124.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth

fully herein.

125.    Plaintiff Thomas brings this action on behalf of the following class, of which he is a

member:

>All persons residing in the United States (including all territories and other political
>subdivisions of the United States) who, within two years before the filing of this
>Complaint and continuing through the conclusion of this action, asked for a copy of
>their file and the response of Defendant failed to include any one or more of the
>following data points: (a) the summary of rights prepared by the Bureau; (b) a toll-
>free telephone number established by Defendant at which personnel are accessible
>to consumers during normal business hours (c) a list of all federal agencies
>responsible for enforcing any provision of this title and the address and any
>appropriate phone number of each such agency, in a form that will assist the
>consumer in selecting the appropriate agency; (d) a statement that the consumer may
>have additional rights under state law, and that the consumer may wish to contact a
>state or local consumer protection agency or a state attorney general (or the
>equivalent thereof) to learn of those rights; and (e) a statement that the consumer
>reporting agency is not required to remove accurate derogatory information or the
>file of the consumer, unless the information is outdated under section 1681c or
>cannot be verified. Excluded from the class definition are any employees, officers,
>directors of Defendant, any attorney appearing in this case, and any judge assigned
>to hear this action.

### Count III- Violation of 15 U.S.C.§ 1681i
### (Plaintiffs Manuel and Rosales)

126.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth

fully herein.

127.    Plaintiffs Manuel and Rosales bring this action on behalf of themselves and all

other similarly situated following Class, of which they are members:

>All persons residing in the United States (including all territories and other political
>subdivisions of the United States) who, within two years before the filing of this
>Complaint and continuing through the conclusion of this action, disputed with First
>Advantage items contained in their First Advantage-generated consumer reports,
>but for whom Frist Advantage did not then commence a reinvestigation until the
>consumer completed certain proprietary forms. Excluded from the Class definition
>are any employees, officers, directors of Defendant, any attorney appearing in this
>case, and any judge assigned to hear this action.

19

128.   Manuel and Rosales bring this action for themselves and on behalf of a class (the

"1681i(a)(2) Class") initially defined as follows:

> All natural persons residing in the United States (a.) who contacted First Advantage
> within five years next preceding April 18, 2013 through and during the pendency of
> this action, (b.) in this communication advised First Advantage that information in
> the consumer's report was inaccurate, (c.) First Advantage records show that it had
> received sufficient information in the telephone communication to identify the
> consumer and (d.) in response to the communication First Advantage did not
> provide notification of the dispute to the vendor or other person who provided the
> item of information in dispute.   Excluded from the class definition are any
> employees, officers, directors of Defendant, any attorney appearing in this case, and
> any judge assigned to hear this action.

129.   The FCRA mandates that CRAs conduct a free, reasonable reinvestigation to

determine the accuracy of information that a consumer disputes as incomplete or inaccurate. 15

U.S.C. § 1681i(a)(l)(A). The CRA may not impose any additional obstacles not provided in the

FCRA. Id

130.   Plaintiffs disputed the accuracy of information contained in their First Advantage

reports, and First Advantage failed each time to commence the reinvestigation until and unless the

consumer first made that dispute in writing and using its own form.

### Count IV- Violations of 15 U.S.C. § 1681k- The "1681k" Class
### (Plaintiffs Manuel, Rosales and White)

131.   Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth

fully herein.

132.   Manuel, Rosales and White bring this action on behalf of the following Class, of

which they are members:

> All natural persons residing within the United States and its Territories who
> (a) were the subject of a First Advantage report sold to a third party, (b) that
> was furnished for an employment purpose, (c) that contained at least one
> adverse public record of an   arrest, indictment, conviction, suit, tax lien,
> outstanding judgment obtained directly from a source other than the

courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (d) within five years preceding the filing of this Complaint and continuing through the conclusion of this action, (e) to whom First Advantage did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

133. Manuel, Rosales and White bring this action for themselves and on behalf of a class

(the "1681k No Notice Sub-Class") initially defined as follows:

All natural persons (a.) who were the subject of a report sold by Defendant to a third party, (b.) that was furnished for an employment purpose, (c.) that contained at least one public record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment (c.) within five years next preceding April 18, 2013 through and during the pendency of this action, and (d.) to whom Defendant did not provide any notice to the consumer at the same time it furnished the report that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, and any judge assigned to hear this action.

134. Pursuant to section 1681n of the FCRA, First Advantage is liable for willfully

violating FCRA section 1681k(a) by engaging in the following conduct:

a) Failing to notify consumers at the time (i.e. contemporaneously) of the fact

that adverse public and criminal record information is being provided to employers or

prospective employers; and

b) Failing to maintain strict procedures to insure that the adverse public-record

information being reported is complete and up to date (the current public-record status of

the item at the time the report is provided).

135.   First Advantage's failure to timely provide the required FCRA notices to the Plaintiffs and other members of the putative class violated 15 U.S.C. § 1681k(a)(1).

## Count V- Violations of 15 U.S.C. § 1681e(b)- Individual Claims
### (Plaintiffs Manuel and Rosales)

136.   Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

137.   Manuel's and Rosales' First Advantage report contained inaccurate information, and that inaccurate information contributed to their potential employers taking an adverse action against them.

138.   First Advantage violated 15 U.S.C.§ 1681e(b) as to Manuel and Rosales by its failure to follow and use reasonable procedures to ensure that their consumer reports were maximally accurate.

139.   As a result of this conduct by the First Advantage, Manuel and Rosales suffered actual damages, including without limitation, by example only, and as described herein on his behalf by counsel: loss of employment, loss of income and equity, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

WHEREFORE, Plaintiffs respectfully pray for relief against First Advantage as follows:

a.   An order certifying the proposed Classes set forth above under Federal Rule of Civil Procedure 23, and appointing Plaintiffs and the undersigned Counsel of Record to represent those Classes;

b.   The creation of a common fund available to provide notice and remedy;

c.   Statutory and punitive damages for themselves and the Classes;

d.   A class-wide liability determination for themselves and each;

e.      Actual damages for Plaintiff Manuel, individually, under Count V;

f.      Attorneys' fees, expenses, and costs

g.      Pre-judgment and post-judgment interest as provided by law; and

h.      All other relief the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted,

**TYRONE B. HENDERSON, TERRELL MANUEL, DAWN M.
ROSALES, KELVIN M. THOMAS and CHARLES E. WHITE,
on behalf of themselves and all others similarly situated,**

By_____

Christopher Colt North, VSB#16955
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, VA 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com