**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**TYRONE B. HENDERSON, SR.,**
**TERRELL MANUEL,**
**DAWN M. ROSALES,**
**KELVIN M. THOMAS,**
**CHARLES E. WHITE,**

*on behalf of themselves and*
*all others similarly situated,*

   **Plaintiffs,**

**v.**           **Civil Action No.: 3:14-cv-00221-REP**

**FIRST ADVANTAGE BACKGROUND**
**SERVICES, CORP.**

   **Defendant.**

<u>**SECOND AMENDED CLASS COMPLAINT**</u>

   COME NOW the Plaintiffs, Tyrone B. Henderson, Sr., Terrell Manuel, Dawn. M. Rosales, Kelvin M. Thomas, and Charles E. White, on behalf of themselves and all others similarly situated, and for their Second Amended Class Complaint, state as follows:

   **INTRODUCTION**

   1.  Tyrone B. Henderson, Sr. (hereinafter "Henderson"), Terrell Manuel (hereinafter "Manuel"), Dawn M. Rosales (hereinafter "Rosales"), Kelvin M. Thomas (hereinafter "Thomas"), and Charles E. White (hereinafter "White") bring this class action against Defendant to obtain relief for themselves and the class(es) they propose to represent for violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.

   2.  First Advantage Background Services Corp. (hereinafter "First Advantage") operates as a consumer reporting agency as defined by the Fair Credit Reporting Act. First

Advantage compiles and maintains files on consumers on a nationwide basis. It then sells this information as consumer reports to various customers who access the First Advantage reports in order to make employment decisions, including whether to hire, terminated, transfer and promote an employee or prospective employee, including the Plaintiffs and putative class members in this case.

3. First Advantage is one of the largest volume background check companies in the nation. It claims that it "leads the industry, delivering over 18 million background screenings annually, with solutions designed to ensure your candidates have the background skills, attitudes, and aptitudes to make a positive difference in your organization, whether they are candidates, employees, contractors, or volunteers, from anywhere in the world." http://www.fadv.com/Solutions/Solutions/Employment-Solutions.aspx last visited October 23, 2014.

4. However, despite its claims of accuracy and precision in its reporting of public records, the truth is that Defendant's operations model is based almost entirely on automated records gathering through webscrapes[1] and internet searches. Further, it has made a decision fatal to countless job applicants to match records, as broadly as it finds them though it does not obtain social security numbers or other necessary identifiers to avoid inevitable false positives.

---

[1] "Web Scraping refers to an application that processes the HTML of a Web page to extract http://www.webopedia.com/TERM/W/Web_Scraping.html last visited October 24, 2014.

5.  All of the claims in this case arise because of First Advantage's decision to place automation and cost control over accuracy and the remedial purposes demanded by the FCRA.

6.  Henderson and Thomas each wrote to First Advantage and requested a copy of their complete files.  First Advantage did not provide a copy of their consumer files upon request.  Henderson and Thomas also disputed incorrect information that they feared might be in their respective consumer files maintained by Defendant.

7.  Manuel, Rosales and White each wrote to First Advantage and requested a copy of their complete consumer files and disputed specific incorrect information that they knew Defendant had reported about them to prospective employers.

8.  White alleges a class claim under 15 U.S.C. §§ 168lc(a)(2) and (5) which excludes certain information from consumer reports. First Advantage prepared and supplied a consumer report about Mr. White that included dismissed charges, as opposed to convictions, which were all more than seven years old.

9.  Manuel, Rosales and White allege individual claims under 15 U.S.C. § 168le(b), which required that First Advantage use "reasonable procedures to assure maximum possible accuracy" in the preparation and publication of their consumer reports.

10.  Plaintiffs bring a class claim under 15 U.S.C. § 1681g.  Plaintiffs requested their consumer disclosures from Defendant and a list of all inquiries made to Defendant for their reports.   When Defendant did respond, it did not provide the "sources of the information" in its reports.   a written summary of rights. Defendant did not reveal the inquiries for reports it sells to third party reseller agencies. Defendant did not provide a statement that the consumer may have additional rights under State law. Defendant did not

provide a statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer unless the information is outdated or cannot be verified. Also, Defendant did not provide a copy of the entire consumer file as requested.

11.     Plaintiffs allege individual claims under 15 U.S.C. § 1681i(a)(1)(A), which requires that Defendant initiate a reinvestigation of its consumer file as soon as it is contacted directly by a consumer conveying a dispute.     Defendant required Thomas to submit a copy of his driver's license before it would proceed with the dispute even when he had already provided in writing his full name, social security number and date of birth. Defendant required the other Plaintiffs to provide a picture identification card and to complete Defendant's proprietary forms and submit the disputes in writing before it would begin to process their disputes.  Manuel and Rosales allege an individual claim under 15 U.S.C. § 1681i(a)(2) for Defendant's failure in response to their disputes to notify the vendor or other person who provided the information in dispute to Defendant.

### JURISDICTION AND VENUE

12.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 168lp and 28 U.S.C. § 1331.  Venue is proper in this Court under 28 U.S.C. § 139l(b) as the Defendant regularly does business in the district and division.  Defendant also maintains its registered agent for service of process in this district and division.  The events as to three of the six named Plaintiffs occurred in the Eastern District of Virginia.

13.     Henderson, Manuel and Thomas reside in the Eastern District of Virginia and maintain all of the documents relevant to this dispute at their homes.  Henderson and Thomas reside in Richmond, Virginia. Manuel resides in Newport News, Virginia.

14.     Upon information and belief, Defendant maintains documents relevant to this action in Richmond, Virginia.  To the extent the documents are not available in Richmond, they are available electronically and can be accessed in Richmond, Virginia.

## PARTIES

15.     Plaintiffs Henderson, Manuel, Rosales, Thomas, and White are natural persons and "consumers" as that term is defined in the FCRA.

16.     First Advantage is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia.

17.     First Advantage completes over 18 million background screenings annually including executive screening, volunteer screening and small, medium and large size business service.

18.     Defendant serves thousands of customers nationwide, from small businesses to Fortune 100 companies, by providing comprehensive screening services.

19.     Defendant is, "a consumer reporting agency which [for the purpose of furnishing consumer reports] for employment purposes […] compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment[.]"  15 U.S.C. § 1681k(a).

20.     First Advantage is not related by common ownership or affiliated by corporate control with Wells Fargo.

## FACTS AS TO HENDERSON

21.     Henderson had suffered a series of rejections for employment based on inaccurate background checks furnished by multiple consumer reporting agencies.  He had sought legal advice, disputed those reports and even commenced litigation about them.

Nevertheless, new reports continued to surface showing the inclusion of felony records for an out of state stranger with a similar name.

22.     As a result, Henderson attempted to determine and dispute the content of his consumer file with each major database that he discovered warehoused and sold criminal background checks.

23.     In April 2013 Henderson, after being advised by First Advantage that he had to complete a "request for a copy of consumer report" (form 122.96.9) and include a copy of his picture ID, submitted those documents to First Advantage.

24.     In addition, in that same correspondence, Henderson disputed inaccurate information (the inaccurate attribution of a Pennsylvania felony conviction of a similarly named stranger) that he believed Defendant maintained in its file.

25.     In response, First Advantage wrote Henderson claiming that at the time it showed no record of his name and social security number in its database and no requests for his records by employers.

26.     Upon information and belief, First Advantage maintains a database that contains information about Mr. Henderson and every other consumer who has been linked to a criminal public record.   Mr. Henderson was the correctly identified defendant in several minor matters in a Virginia General District Court.  And he shared the same first and last name and date of birth as a stranger in Pennsylvania who had been convicted of at least one felony.

27.     If an employer customer contacted First Advantage and requested a consumer report regarding Henderson, Defendant would access its existing National Criminal Records File database and use a matching rule of:  "First and Last name, plus date

of birth" to match records to Henderson's report.

28.     Defendant did not ever provide Henderson a copy of his consumer file.

29.     It is Defendant's policy to refuse to provide a consumer disclosure pursuant to 15 U.S.C. § 1681g(a) if it has not previously furnished a consumer report regarding that consumer to a third party.

30.     As a result of Defendant's actions, Mr. Henderson was deprived of his right to his complete file.

## FACTS AS TO MANUEL

31.     In February 2012 Manuel applied for a job as a banker with Wells Fargo.

32.     Wells Fargo purchased a background check on Manuel from First Advantage, for an employment purpose.

33.     On February 9, 2012, Manuel interviewed with a Wells Fargo recruiter.

34.     The following week Manuel interviewed with an individual at a branch of Defendant.

35.     On February 24, 2012, Wells Fargo offered Manuel a position at the branch where he had his immediately preceding interview.

36.     Defendant provided Manuel with an offer letter dated February 24, 2012, and asked him to sign and return it if he was interested in the position.

37.     Manuel signed the offer letter on February 27, 2012, and immediately returned it to Wells Fargo.

38.     Defendant's representative informed Manuel that he would start employment March 13, 2012.

39.     Upon information and belief, Wells Fargo ordered a consumer report on Manuel from Defendant on February 27, 2012.

40.     The Manuel consumer report was were provided by First Advantage to Wells Fargo, not communicated among persons related by common ownership or affiliated by corporate control.

41.     The Manuel consumer report was obtained from Defendant by Wells Fargo as a routine consumer report for employment purposes, and not in connection with *any investigation of* suspected misconduct relating to employment or *any investigation of* compliance with Federal, State or local laws and regulations, the rules of a self-regulatory organization, or any pre-existing written policies of the employer.

42.     As March 13, 2012, approached, Manuel still did not know exactly where to report for work at Defendant, nor had he signed any additional employment related papers.

43.     Manuel sent emails to his contacts at Wells Fargo and its recruiter to no avail.

44.     Later, Manuel called the Wells Fargo recruiter, and she informed Manuel that they were waiting on the results of Manuel's background report.

45.     The recruiter also informed Manuel that she could not talk about his background report results with him.

46.     The recruiter referred Manuel to Defendant.

47.     Manuel called Defendant and was told that Defendant was waiting for additional information.

48.     Upon information and belief, Defendant completed the consumer report April 2, 2012, at which time it adjudicated him to be ineligible for employment at Wells Fargo,

and immediately conveyed the information in the report to Wells Fargo. Despite the fact that the report contained derogatory public record information likely to have an adverse impact on Mr. Manuel's employment, Defendant did not transmit this information to Plaintiff at the time that it supplied his consumer report to Wells Fargo.

49. On or about April 3, 2012, the recruiter for Wells Fargo told Manuel that the report had been completed and the result disqualified Manuel for employment at Wells Fargo.

50. Later in April Manuel received a copy of a "pre-adverse action notification" and a copy of his consumer report from either Wells Fargo or First Advantage.

51. The letter was dated April 3, 2012, but Manuel does not know when the sender put the letter in the mail.

52. The consumer report contained Manuel's alleged criminal history, not information solely as to transactions or experiences between Manuel and First Advantage or Wells Fargo.

53. The report provided by First Advantage contained numerous material errors.

54. Specifically, it contained charges for a total stranger including, among other things, charges for making terroristic threats, theft, possession of burglar's tools, and threats to kill/domestic violence.

55. In creating and furnishing Manuel's consumer report, Defendant failed to follow reasonable procedures to ensure the report was as accurate as maximally possible.

56. For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social

security number living in a different state at a different address within Manuel's consumer report.

57.     Defendant failed to provide Manuel with a letter or any other communication "at the time" it furnished his consumer report containing adverse public record information to Wells Fargo.

58.     Manuel requested a copy of his consumer file from Defendant. Defendant did not respond or provide any documents to Manuel.

59.     Manuel also contacted Defendant to dispute the consumer report it provided to Wells Fargo.

60.     First Advantage refused to process the dispute until Manuel completed Defendant's proprietary form entitled "Notice of Consumer Dispute" and an "Authorization for Reinvestigation of Consumer Dispute."

61.     Manuel signed, completed and forwarded those forms to First Advantage, but First Advantage never, as far as Manuel knows, corrected the report or responded.

62.     As a result of Defendant's conduct, Mr. Manuel suffered damages resulting from the deprivation of his legal rights pursuant to the FCRA. He suffered statutory damages of between $100 and $1000 for each violation; he also suffered unlimited economic and non-economic actual damages including but not limited to loss of employment, embarrassment, damage to his reputation, inconvenience, anxiety, and humiliation.

## FACTS AS TO ROSALES

63.     In January 2013 Rosales applied for a job as a pharmacist with CVS.

64.     CVS purchased a consumer report on Rosales from First Advantage for an employment purpose.

65.     On February 8, 2013, CVS offered Rosales a job.

66.     Rosales in turn resigned her current employment to accept the position with CVS.

67.     On February 25, 2013, CVS telephoned Rosales and asked if she failed to disclose information on her application.  Rosales said "no."

68.      CVS informed Rosales that there was a "hit" on her background report, and that CVS would no longer hire her.

69.     Rosales explained that there should be no such "hit" on her report, but CVS nevertheless failed to hire her.

70.     On or about February 26, 2013, CVS informed Rosales that it had a "summary" of her report provided by First Advantage and that she had failed a Fraud and Abuse (FACIS) inquiry provided to First Advantage by another consumer reporting agency.

71.     Neither Defendant nor CVS provided a copy of the consumer report to Rosales.

72.     Neither Defendant nor CVS provided Rosales with a written summary of her FCRA rights.

73.     Rosales contacted First Advantage to inquire about the contents of her report.

74.     First Advantage declined to provide Rosales with any specific information. It directed her to see a copy of the report through its website, which Rosales did the same day.

75. Defendant failed to provide Rosales with a letter or any other communication "at the time" her consumer report containing adverse public record information was furnished by Defendant to CVS.

76. Rosales received a copy of the consumer report on February 28, 2013.

77. The FACIS portion of the report contained information regarding a complete stranger, who was an individual named Dawn Michelle Johnson, a nurse, who had a derogatory employment citation issued by the Florida Department of Health.

78. The consumer report First Advantage provided to Rosales after she requested a copy of her file did not contain previous inquiries or the actual sources who had provided components of information in the report to First Advantage.

79. In creating and furnishing Rosales' consumer report, Defendant failed to follow reasonable procedures to ensure the report was as accurate as maximally possible.

80. For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Rosales' consumer report.

81. Other than sharing Rosales' first, middle and maiden name, there were no matching criteria (address, date of birth, social security number, etc.) that would reasonably link Rosales to Johnson.

82. Rosales made a written request to First Advantage to obtain a copy of her file.

83. The materials forwarded in response by First Advantage to Rosales failed to inform her that a consumer reporting agency is not required to remove accurate derogatory

information from the file of the consumer, unless the information is outdated under 1681c or cannot be verified in violation of 15 U.S.C. §1681g(c)(2)(E).

84.     Upon receipt of the consumer report, Rosales also made a written dispute and initiated a reinvestigation with First Advantage.

85.     First Advantage refused to process the written dispute until Rosales completed First Advantage's proprietary forms in violation of 15 U.S.C. §1681i.

## FACTS AS TO THOMAS

86.     In 2008, Thomas applied for a job and was hired by Cableview Communications.

87.     Thomas applied for a job with Cableview to cover its territory in and about the Richmond, Virginia geographic area.

88.     Thomas may have authorized a background report.

89.     In the fall of 2011, Cableview decided to sell its operation to FTS.

90.     Cableview and FTS collectively ordered a background report on Thomas from Backgroundchecks.com on September 30, 2011.

91.     The background report contained numerous felony convictions for a complete stranger.

92.     Based on the results of the background report, Cableview declined to retain Thomas and FTS declined to hire him.

93.     This led Thomas to question what other background check companies might report on him as he returned to the job market.

94.     On or about December 4, 2011, Thomas sent a letter to First Advantage requesting a copy of his entire file and disputing any inaccurate information therein.

95.     The First Advantage response failed to provide any of the information required at § 1681g(c)(2), except Defendant's toll-free number.

## FACTS AS TO WHITE

96.     Wells Fargo hired White in 2008 and White worked there for four years before Wells Fargo transferred him to its mortgage department in February 2012.

97.     Before White joined Wells Fargo in 2008 he authorized a background check and informed Wells Fargo about his misdemeanor convictions arising in 1994 and 1996 respectively.

98.     Before White joined Wells Fargo in 2008, Wells Fargo, upon information and belief, ordered, received and reviewed the consumer report that White authorized and also evaluated what he told Wells Fargo about his two misdemeanor convictions.

99.     In connection with the transfer from one Wells Fargo department to another, which began in February 2012, Defendant required White to submit his fingerprints and to again authorize a consumer report.

100.    First Advantage prepared a consumer report on White dated March 16, 2012, which it delivered contemporaneously to Wells Fargo.  At that time, First Advantage had determined that based on the consumer report it had prepared, Mr. White was ineligible for employment at Wells Fargo.

101.    White met with a Wells Fargo Human Resources manager about the consumer report on March 21, 2012.

102.    According to the Human Resources representative, his consumer report revealed felony charges, which according to her, caused White to not only be turned down

for the new position, but to be discharged from employment at Wells Fargo immediately on March 21, 2012.

103.    The First Advantage consumer report contained three felony charges that had been dismissed more than seven years before the date of the report (August 1994 versus March 2012).

104.    By reporting those felony charges to Wells Fargo, First Advantage violated § 1681c of the FCRA.

105.    Defendant failed to provide White with a letter or any other communication "at the time" his consumer report containing adverse public record information was furnished by Defendant to Wells Fargo.

106.    Wells Fargo provided White with no prior warning whatsoever before firing him and walking him off its business premises March 21, 2012.

107.    On or about March 23, 2012, White received a letter dated March 21, 2012 from Wells Fargo stating that as a result of the background screening, White was ineligible for employment with Wells Fargo.

108.    The letter also referred to "our conversation on March 21, 2012" which was the conversation between White and the Human Resources representative about the background report that immediately preceded Wells Fargo firing White.

109.    Also on or about March 23, 2012, White received a letter dated March 20, 2012 purportedly from Wells Fargo.

110.    The March 20, 2012, letter which, upon information and belief, actually came from First Advantage, suggested that a decision was currently pending concerning

White's application for employment. In fact, not only had the decision to terminate White already been made, but White had actually been terminated.

111.    The March 20, 2012, letter included a copy of the consumer report provided by First Advantage to Wells Fargo and a written summary of White's FCRA rights.

112.    By the time White received the documents contained with the March 20, 2012, letter he had already been discharged by Wells Fargo and walked off its business premises.

113.    The consumer report contained White's alleged criminal history, not information solely as to transactions or experiences between White and First Advantage or Wells Fargo.

114.    White's criminal record did not change while Wells Fargo employed him between 2008 and 2012.

115.    On March 28, 2012, White faxed written disputes regarding the consumer report to First Advantage.

116.    White's dispute included the Notice of Consumer Dispute form required by First Advantage and completed by White.

117.    The dispute also included additional forms required by First Advantage that White signed, plus a copy of White's criminal record as published by the United States Department of Justice, Federal Bureau of Investigation demonstrating that there were not two felony charges that were reduced to misdemeanors, but rather one, SID-AZ10069742.

118.    White also included a copy of his picture ID, front and back, and court records from Maricopa County confirming that he had one conviction for burglary in the third degree, a class six offense designated as a misdemeanor.

119.	A fax confirmation sheet confirmed that the fax was successfully delivered to First Advantage Consumer Relations, Fax No.: 800-868-6247.

120.	Subsequently, White received a letter dated March 27, 2012, which purported to be from Wells Fargo but which, upon information and belief, was a post adverse action notification provided by First Advantage to White.

121.	The March 27, 2012, letter said that the decision not to consider White further for employment at Wells Fargo was based in part on information contained in the consumer report First Advantage provided to Wells Fargo.

122.	As of March 27, 2012, White's employment with Wells Fargo already had been terminated six days earlier when he was walked off the premises.

123.	Neither Wells Fargo nor First Advantage provided White with a copy of his consumer report at least five business days' before taking adverse employment action, including its decision (1) not to transfer him to the new position in the mortgage department and (2) to fire him from his then-existing position.  The decision was based in whole or in part on the results of his consumer report.

124.	Neither Wells Fargo nor First Advantage provided White with a written summary of his FCRA rights at least five business days before deciding not to transfer him to the new position in the mortgage department and to fire him from his then existing position based in whole or in part on the results of his consumer report.

125.	By letter dated April 6, 2012, First Advantage told White that it had completed its reinvestigation of the information White disputed in his consumer report.

126.	The letter did not provide a copy of either the original consumer report or a revised consumer report.

127.     Instead, the letter mysteriously referred to fingerprints and said "if the outcome of the reinvestigation did not resolve" the dispute, White could contact the furnisher of the information, the Maricopa, AZ Superior Court, at the telephone number First Advantage provided.

128.     White knew there was nothing wrong with the records provided by the Arizona Superior Court, and he gave up.

129.     In January 2013 White received notice of the *Henderson v. Verifications, Inc.*, 3:11cv514 (E.D.Va.) Class Action pending in this Court.

130.     The *Henderson* Class Action Notice referred to violations of the FCRA by Verifications, Inc., including dissemination of inaccurate employment background information to prospective employers.

131.     On or about February 11, 2013, White filed a claim in the Verifications, Inc. class action.

132.     In January 2014, while speaking with class counsel about the *Verifications* class action, White also mentioned his experience with Wells Fargo and First Advantage. During that conversation White first discovered that Wells Fargo and First Advantage failed to comply with the FCRA concerning the decision not to retain him.

133.     In January 2014 White sent a letter to First Advantage requesting a copy of his entire file and disputing inaccurate information in his consumer file.

134.     In response, on February 25, February 27 and March 13, 2014, First Advantage provided White with requests for his identifying information and blank forms to complete, but did not provide him a corrected consumer report.

135. White had already complied with all of First Advantage's requirements in March 2012.

136. As far as White knows, First Advantage never corrected his false consumer report.

137. The consumer report First Advantage ultimately provided to White after he requested a copy of his file did not contain previous inquiries or the actual sources who had provided components of information in the report to First Advantage.

### COMMON FACTS DEMONSTRATING WILLFUL VIOLATIONS

138. In January of 2013, First Advantage's parent company acquired LexisNexis Risk Solutions' screening business through a transaction with First Advantage's parent, private equity firm Symphony Technology Group.

139. The LexisNexis entity continued with only a name change – Defendant is the same business organization and entity and has only changed its name.

140. Further, even before that change, in approximately 2008, LexisNexis had merged with another consumer reporting agency, ChoicePoint, and its corporate notice, knowledge, systems and data have remained integrated within the Defendant.

141. First Advantage prepares and furnishes consumer reports that contain public records. First Advantage does not obtain the complete public record of the individuals about whom it prepares and furnishes consumer reports. First Advantage does not match social security numbers between the public record and the person about whom it prepares and furnishes a report. First Advantage matches first name, last name, date of birth, and disposition in order to determine that the public record is a match to the individual about whom it is generating a report.

142.    In 2008, LexisNexis settled an earlier class action lawsuit, *Williams v. LexisNexis Risk Management, Inc.*, No.3:06-cv-00241-REP (E.D.Va.), for the very conduct alleged in this case relating to its onerous reinvestigation process.

143.    The relevant class definition in *Williams*, identifying those consumers who released their reinvestigation claims against LexisNexis, and who are therefore exluded from the class (defined below) for this case was:

> All natural persons residing in the United States who were the subject of a consumer report prepared by Defendant within 2 years prior to the filing of this complaint for whom Defendant refused to conduct a reinvestigation of a dispute until and unless the consumer provided with his or her dispute photocopies of two forms of identification.

144.    In addition to settling class claims similar to those alleged by Plaintiffs for its reinvestigation process, LexisNexis also settled class claims for its failure to provide the proper notice to consumers about whom it furnished reports in *Williams*.

145.    In fact, LexisNexis paid a substantial amount of each consumer in these classes, especially to those who had prosecuted the comparable §1681i(a) claim, who each received $1,000 without the need to file a claim, and net of attorneys' fees.

146.    Additionally, at the same time that the *Williams* case was resolved, LexisNexis purchased an industry competitor, ChoicePoint, and absorbed the entity-and its full compliance and legal team-into LexisNexis' business.

147.    The same week that LexisNexis announced its merger-purchase of ChoicePoint, the companies caused the settlement of a class action regarding the same business process used by then ChoicePoint and present LexisNexis. The case was pending in this Court, but then transferred to the Eastern District of Virginia for consolidation with

the employer case, which had also settled.  *Beverly v. ChoicePoint, Inc.,* CIV.A. 3:08-cv-59 (W.D.N.C.)

148.    As with LexisNexis today, in 2008, ChoicePoint also had been responsible for mailing the various notice letters required of an employer by the FCRA.

149.    In Williams, this Court denied Defendant's summary judgment motion on the same allegations as in this case.  *William*s settled for approximately $22 million.  *Beverly* settled for approximately $4 million.

150.    Because of these earlier lawsuits, First Advantage knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

151.    First Advantage also obtained or had available substantial written materials that apprised it of its duties under the FCRA.

152.    Despite knowing of these legal obligations, First Advantage acted consciously in breaching its known duties and deprived Plaintiffs and other members of the Classes of their rights under the FCRA.

153.    First Advantage's conduct as alleged herein was consistent with its established and systematically executed procedures and policies for compliance with the FCRA.

154.    The conduct, action, and inaction of Defendant was reckless, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

155.    In the alternative, the conduct, action, and inaction of Defendant was

negligent, rendering Defendant liable pursuant to 15 U.S.C. § 1681o, with a separate trial for actual damages if established.

156.    Plaintiffs and other members of the putative class and subclasses are entitled to recover costs and attorney's fees, as well as appropriate injunctive and declaratory relief from Defendant, in a manner and an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

157.    Defendant is a Consumer Reporting Agency as defined by the FCRA.

158.    Defendant prepared and furnished consumer reports about each Plaintiff, and thus and each class member, that contained at least one public record with a criminal or traffic conviction.

159.    Defendant maintained policies and procedures that allowed it to match derogatory public records to the consumers about whom it prepared and furnished a report based on first name, last name, and date of birth.  Defendant does not match social security numbers.  Defendant does not obtain the complete public record in order to match the consumer to the record, prepare and supply a report to an employer.

160.    Upon furnishing a consumer report, the Defendant does not provide consumers with their reports or send notices that it has prepared a report containing a derogatory public record likely to have an adverse effect upon the consumer's ability to obtain employment at the time that it supplies the report to the employer.

161.    Upon written request by a consumer, the Defendant does not provide the consumer with his or her consumer disclosure file unless (1) it has provided a report about the consumer to a customer, regardless of whether it maintains information about that consumer in its files; (2) the consumer has filled out special paperwork required by First

Advantage; (3) the consumer has provided identification.

162. Upon written dispute by a consumer, the Defendant does not provide the consumer with his or her report unless (1) it has provided a report about the consumer to a customer; (2) the consumer has filled out special paperwork required by First Advantage such as "Notice of Consumer Dispute" and "Authorization for Reinvestigation of Consumer Dispute"; (3) the consumer has provided identification.

163. The Defendant provides adjudication services for its customers, meaning that it makes a determination that an employee is ineligible for employment based on the information in the consumer report that it prepares.

164. The Defendant does not provide the consumer with notice at the time it furnishes the report to the employer, nor does it provide notice to the consumer five days prior to taking the adverse employment action. Defendant adjudicates the consumer as ineligible at the same time that it provides the consumer report to the employer.

165. The Defendant does not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires the consumer reporting agency to actually contact the original source of the public record information (e.g. the Court clerk) immediately prior to furnishing a report that includes derogatory public record information, and thus § 1681k(a)(2) is inapplicable.

166. Defendant follows a procedure for processing and responding to consumer disputes that does not comply with 15 U.S.C. §1681i. Defendant has a policy of forcing consumers to make cumbersome and delayed written disputes using its proprietary forms and providing documentation otherwise not required by the FCRA.

167. Defendant obtains its information from third-party vendors and sources,

which it does not identify or disclose to consumers when it provides a copy of their file pursuant to 15 U.S.C. § 1681g(a)(1).

## CLAIMS FOR RELIEF
### Count I- Violation of 15 U.S.C. § 1681c(a)(2) and (5) – The "1681c" Class
### Class Action Claim
### (Plaintiff White)

168.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

169.     Pursuant to Fed. R. Civ. P. 23, Plaintiff White brings this action on behalf of the following class, of which he is a member, initially defined as:

> All natural persons residing within the United States and its Territories who, beginning two years before the filing of this Complaint and continuing through the conclusion of this action, (1) were the subject of a consumer report prepared by Defendant, which report was furnished for an employment purpose for a position for which the annual salary is less than $75,000.00, (2) within five years of the filing of the Class Complaint and continuing while this case is pending, and for whom (3) Defendant reported criminal history information (other than criminal conviction) that pre-dates the report by more than seven years.

> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action, as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

170.     **Numerosity**. Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.   The names and addresses of members of the Class are identifiable through documents maintained by Defendant and members of the Class may be notified   of the pendency   of this action   by published and/or mailed notice.

171.     **Existence and Predominance of Common Questions of Law and Fact**.

Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. Without limitation, the focus of the allegations on behalf of the class is the uniform conduct and procedures and whether the Defendant prepared and furnished consumer reports with criminal history information (other than criminal conviction) that pre-dates the report by more than seven years or until the governing statute of limitations has expired. Because the Defendant routinely prepares consumer reports that contain criminal history information other than convictions that antedates the report by more than seven years, this question predominates over questions affecting only individual members. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

172.    **Typicality**.   Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.    As go the claims of the individual Plaintiff, so goes the class.   There are no material differences in the law or material facts for the claim of the Plaintiff from that of the class.   Without limitation, the procedures of Defendant give rise to the causes of action and were uniform and systemic. The reports prepared and furnished regarding Plaintiff and the circumstances for which such reports were furnished was uniform and typical of the facts for each member of the Class.

173.    **Adequacy**.   Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent; he has retained counsel competent and experienced in such litigation, and intends to prosecute this action vigorously. The interests

of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

174. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendants has violated the FCRA, very few Class members-and almost none who are unrepresented by counsel-will ever know that they have been subject to a First Advantage report, let alone one that illegally included arrest records that antedated the report by seven years. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

175. Defendant's conduct violated 15 U.S.C. § 1681c(a)(2) when it reported arrest records that antedated the report by more than seven years or the applicable statute of limitations, whichever is longer.

176. Defendant's conduct, action and inaction were willful and/or reckless, rendering the Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

177. In the alternative, the Defendant's conduct, action and inaction were negligent, rendering the Defendant liable pursuant to 15 U.S.C. § 1681o. If established, issue-only certification is proper pursuant to Fed. R. Civ. P. 23(c)(4).

178. Named Plaintiffs and other members of the putative class are entitled to recovery of costs and attorney's fees, as well as appropriate injunctive relief from Defendant, in a manner and amount to be determined by the court pursuant to 15 U.S.C. §§ 1681n & 1681o.

## Count II- Violation of 15 U.S.C. § 1681g(a)
### Class Action Claim
### (All Plaintiffs)

179. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

180. Plaintiffs Henderson, Manuel, White, Rosales and Thomas bring this action on behalf of the following "§1681g(a)" class, of which each is a member:

> All persons residing in the United State of America and its Territories (a) who contacted First Advantage and requested information in their consumer file (regardless of whether they used a word "file," "report" or some other term indicating that the consumer was seeking from Defendant information about himself or herself), (b) within five years preceding the filing of this Complaint and continuing through the conclusion of this action, and (c) in response First Advantage failed to provide a copy of the complete file.

> Excluded from the class definition are any employees, officers, and directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous

settlement class or who executed an individual settlement agreement releasing the Defendant.

181.    Plaintiffs Manual, White, Rosales and Thomas also bring this action on behalf of the following "1681g(a)(1) Sources of Information" sub-class:

All persons residing in the United State of America and its Territories (a) who contacted First Advantage and requested information in their consumer file (regardless of whether they used a word "file," "report" or some other term indicating that the consumer was seeking from Defendant information about himself or herself), (b) within five years preceding the filing of this Complaint and continuing through the conclusion of this action, and (c) in response First Advantage disclosed a report that did not identify the actual direct source of the information in the report.

Excluded from the class definition are any employees, officers, and directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

182.    Plaintiff Thomas brings this action on behalf of the following "§1681g(c)(2) subclass, of which he is a member:

All persons residing in the United States (including all territories and other political subdivisions of the United States) who, within two years before the filing of this Complaint and continuing through the conclusion of this action, asked for a copy of their file and the response of Defendant failed to include any one or more of the following data points: (a) the summary of rights prepared by the Bureau; (b) a toll-free telephone number established by Defendant at which personnel are accessible to consumers during normal business hours (c) a list of all federal agencies responsible for enforcing any provision of this title and the address and any appropriate phone number of each such agency, in a form that will assist the consumer in selecting the appropriate agency; (d) a statement that the consumer may have additional rights under state law, and that the consumer may wish to contact a state or local consumer protection agency or a state attorney general (or the equivalent thereof) to learn of those rights; and (e) a statement that the consumer reporting agency is not required to remove accurate derogatory information or the file of the consumer, unless the information is outdated under section 1681c or cannot be verified.

Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

183.    The FCRA obligates CRAs like First Advantage to furnish to a requesting consumer "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a).

184.    In addition to the employment-related information that First Advantage provides third parties, First Advantage obtains and furnishes records within its reports from private sources that it does not identify as a source within its consumer disclosure in violation of §1681g(a)(1).

185.

184**.    Numerosity**.  Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.   The names and addresses of members of the Class are identifiable through documents maintained by Defendant and members of the Class may be notified   of the pendency   of this action   by published and/or mailed notice.

185.    **Existence and Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. Without limitation, the focus of the allegations on behalf of the class is the uniform conduct and procedures and whether the Defendant failed and refused to provide consumers with a copy of their complete consumer files upon a consumer's lawful request.   This question predominates over questions affecting only individual members. Even the

appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

186. **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same cause of action as the other members of the Class. As go the claims of the individual Plaintiffs, so goes the class. There are no material differences in the law or material facts for the claim of the Plaintiffs from that of the class. Without limitation, the procedures of Defendant give rise to the causes of action and were uniform and systemic. The Defendant's refusal to provide consumers with their full file upon a lawful request was uniform and typical of the facts for each member of the Class. The Defendant's refusal to provide consumers with the summary of rights required by 15 U.S.C. §§ 1681g(c)(2) was uniform and typical of the facts for each member of the Class.

187. **Adequacy**. Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seeks to represent, he has retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

188. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First

Advantage's conduct. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendants has violated the FCRA, very few Class members-and almost none who are unrepresented by counsel-will ever know that Defendant maintains a consumer information about them or whether they have been subject to a First Advantage report that was furnished to a third party. The FCRA entitles consumers to a copy of their full file upon a lawful request, regardless of whether the CRA furnishes the information to a third party or whether special forms are completed. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

189. Defendant violated 15 U.S.C. § 1681g(a) as to the § 1681g(a) class in systematically failing to provide a complete copy of all information in class member files within its mandated disclosures. Further, It violated §1681g(a)(1) by its failure to disclosure the actual sources of information within its reports. And it violated §1681g(c) by its failure to include the explanation of rights disclosures mandated by this provision.

190. Defendant's conduct, action and inaction were willful and/or reckless, rendering Defendant liable for statutory damages and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. § 1681n.

191. Named Plaintiffs and other members of the putative class are entitled to recovery of costs and attorney's fees, as well as appropriate injunctive relief from Defendant, in a manner and amount to be determined by the court pursuant to 15 U.S.C. §§ 1681n & 1681o.

**Count III- Violation of 15 U.S.C.§ 168li - The "1681i" Classes**
**Class Action Claim**
**(Plaintiffs Henderson, Manuel, and Rosales)**

192. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

193. Plaintiffs Henderson, Manuel and Rosales bring this action on behalf of themselves and all other similarly situated following Class (the "1681i(a)(1) Class"), of which they are members:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) who, on or after March 1, 2013 and continuing through the conclusion of this action, (a.) contacted First Advantage, (b.) disputed with First Advantage items contained in their First Advantage-generated consumer reports, but for whom First Advantage did not then commence a reinvestigation until the consumer completed certain proprietary forms.

> Excluded from the class definition are any employees, officers, and directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

194. The FCRA mandates that CRAs conduct a free, reasonable reinvestigation to determine the accuracy of information that a consumer disputes as incomplete or inaccurate. 15 U.S.C. § 1681i(a)(l)(A). The CRA may not impose any additional obstacles not provided in the FCRA.

195. Plaintiffs disputed the accuracy of information contained in their First Advantage reports, and First Advantage failed each time to commence the reinvestigation until and unless the consumer first made that dispute in writing and using its own form.

196. **Numerosity**. Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical. The names and addresses of members of the Class are identifiable through documents maintained by Defendant and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

197. **Existence and Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. Without limitation, the focus of the allegations on behalf of the class is the uniform conduct and procedures and whether the Defendant failed and refused to conduct a reasonable reinvestigation of information disputed by the consumer. This question predominates over questions affecting only individual members. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

198. **Typicality**. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same cause of action as the other members of the Class. As go the claims of the individual Plaintiff, so goes the class. There are no material differences in the law or material facts for the claim of the Plaintiffs from that of the class. Without limitation, the procedures of Defendant give rise to the causes of action and were uniform and systemic. The Defendant's refusal to conduct

reasonable reinvestigations upon receipt of a consumer dispute as required by 15 U.S.C. §§ 1681i(a)(1) was uniform and typical of the facts for each member of the Class.

199. **Adequacy**. Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

200. **Superiority**. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendant has violated the FCRA, very few Class members-and almost none who are unrepresented by counsel-will ever know that Defendant violated the FCRA by, among other things, requiring consumers to fill out proprietary forms before it would conduct a reinvestigation or that it is required to remove inaccurate information or information that cannot be verified. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the

complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

201.    Defendant violated §1681i(a) as to each class member and the named Plaintiff.

202.    Defendant's conduct, action and inaction were willful and/or reckless, rendering Defendant liable for statutory damages and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. § 1681n.

203.    Named Plaintiffs and other members of the putative class are entitled to recovery of costs and attorney's fees, as well as appropriate injunctive relief from Defendant, in a manner and amount to be determined by the court pursuant to 15 U.S.C. §§ 1681n & 1681o.

### Count III- Violations of 15 U.S.C. § 1681k- The "1681k" Class
### Class Action Claim
### (Plaintiffs Manuel, Rosales and White)

204.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

205.    Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon his ability to obtain or maintain employment, Defendant failed to provide notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person to whom such information was being reported.

206.    Upon information and belief, First Advantage did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a

consumer reporting agency to actually contact the original source of public records information (e.g. the Court Clerk) immediately before furnishing a report which includes such information. Further, it would require the pre-existing maintenance and design of strict procedures to ensure that First Advantage only reported the complete public record. It never did this for this class or most consumers generally. Title 15 U.S.C. §1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

207.    Manuel, Rosales and White bring this action on behalf of the following Class, of which they are members:

> All natural persons residing within the United States and its Territories who (a) were the subject of a First Advantage report sold to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one adverse public record of an arrest, indictment, conviction, suit, tax lien, outstanding judgment obtained directly from a source other than the courthouse or governmental entity that maintains such record where First Advantage's report of that record did not a partial or full social security number  (d) on or after March 1, 2013 and continuing through the conclusion of this action, (e) to whom First Advantage did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

208.    Pursuant to section 1681n of the FCRA, First Advantage is liable for willfully violating FCRA section 1681k(a) by Failing to notify consumers at the time (i.e. contemporaneously) of the fact that adverse public and criminal record information is being provided to employers or prospective employers. First Advantage is not entitled to claim protection from a 1681k(a)(1) violation under section 1681k(a)(2) because it does not

maintain strict procedures to insure that the adverse public-record information being reported is complete and up to date (the current public-record status of the item at the time the report is provided). First Advantage never matches social security numbers or obtains the complete public record file to ensure that the person about whom the report is prepared matches the person to whom the public record belongs.

209.     First Advantage's failure to timely provide the required FCRA notices to the Plaintiffs and other members of the putative class violated 15 U.S.C. § 1681k(a).

210.     **Numerosity**.  Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.   The names and addresses of members of the Class are identifiable through documents maintained by Defendant and  members of the Class may be notified  of the pendency of this action  by published and/or  mailed notice.

211.     **Existence and Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. Without limitation, the focus of the allegations on behalf of the class is the uniform conduct and procedures and whether the Defendant failed to send consumers the notice required under section 1681k(a)(1). This question predominates over questions affecting only individual members. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

212.     **Typicality**.   Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same cause of action as the other members of the Class.   As go the claims of the individual Plaintiff, so goes the class.   There are no material differences in the law or material facts for the claim of the

Plaintiffs from that of the class.  Without limitation, the procedures of Defendant give rise to the causes of action and were uniform and systemic. The Defendant's refusal to send the notices required by 15 U.S.C. § 1681k(a)(1) was uniform and typical of the facts for each member of the Class.

213.  **Adequacy**.  Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

214.  **Superiority**.  Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendant has violated the FCRA, very few Class members-and almost none who are unrepresented by counsel-will ever know that Defendant violated the FCRA by, among other things, failing to send them a notice at the time it supplied a consumer report that contained a derogatory public record likely to have an adverse impact on the ability to obtain employment. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore,

individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

215. Defendant's conduct, action and inaction were willful and/or reckless, rendering Defendant liable for statutory damages and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. § 1681n.

217. Named Plaintiffs and other members of the putative class are entitled to recovery of costs and attorney's fees, as well as appropriate injunctive relief from Defendant, in a manner and amount to be determined by the court pursuant to 15 U.S.C. §§ 1681n & 1681o.

### Count V- Violations of 15 U.S.C. § 1681e(b)- Individual Claims
### (Plaintiffs Manuel, Rosales and White)

218. Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

219. Manuel's, Rosales' and White's First Advantage reports each contained inaccurate information, and that inaccurate information contributed to their potential employers taking an adverse action against them.

220. First Advantage violated 15 U.S.C.§ 1681e(b) as to Manuel, Rosales and White by its failure to establish, follow and use reasonable procedures to ensure that their consumer reports were maximally accurate.

221.     As a result of this conduct by First Advantage, Manuel, Rosales and White suffered actual damages, including without limitation, by example only, and as described herein on his behalf by counsel: loss of employment, loss of income and equity, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

222.     Defendant's violations of 15 U.S.C. § 1681e(b) were willful and/or reckless, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendant was negligent, entitling the Plaintiff's to recover under 15 U.S.C. § 1681o.

223.     Plaintiffs are entitled to recover actual and/or statutory damages, punitive damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiffs respectfully pray for relief against First Advantage as follows:

a.     An order certifying the proposed Classes set forth above under Federal Rule of Civil Procedure 23, and appointing Plaintiffs and the undersigned Counsel of Record to represent those Classes;

b.     That judgment be entered for Plaintiffs White, Manuel and Rosales individually against Defendant for actual and/or statutory damages and punitive damages for Defendant's violation of 15 U.S.C. §§ 1681e(b) pursuant to §§ 1681n & 1681o;

c.     The creation of a common fund available to provide notice and remedy;

d.     That judgment be entered for the Classes against Defendant for statutory and punitive damages based on Defendant's violations of 15 U.S.C. §§ 1681k, 1681g, 1681i, and 1681c, 1681n & 1681o, or in the alternative, judgment for issue-only certification (liability) and judgment for the Classes;

e.	A class-wide liability determination for named Plaintiffs and each class member;

f.	Appropriate injunctive and declaratory relief that the Defendant violated the FCRA;

g.	Attorneys' fees, expenses, and costs provided by 15 U.S.C §§ 1681n & 1681o;

h.	 Pre-judgment and post-judgment interest as provided by law; and

i.	All other relief the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted,

**TYRONE B. HENDERSON, TERRELL MANUEL, DAWN M. ROSALES, KELVIN M. THOMAS, and CHARLES E. WHITE, on behalf of themselves and all others similarly situated,**

_____/s/_____
Susan Mary Rotkis
VSB 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 - Facsmile
Email: srotkis@clalegal.com

Leonard A. Bennett, Esq.
(VSB#37523)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone

(757) 930-3662 - Facsimile
E-mail:  lenbennett@clalegal.com


Christopher Colt North
751-A Thimble Shoals Blvd.
Newport News, VA 23606
(757) 873-1010 - Telephone
Email: cnorthlaw@aol.com

Anthony R. Pecora
O'Toole McLaughlin Dooley & Pecora Co LPA
5455 Detroit Rd
Sheffield Village, OH 44054
NA
(440) 930-4017
Email: apecora@sheffieldlaw.com

Matthew Anderson Dooley
O'Toole McLaughlin Dooley & Pecora Co LPA
5455 Detroit Rd
Sheffield Village, OH 44054
440-930-4017
Fax: 440-934-7208
Email: mdooley@omdplaw.com

William Leonard Downing
The Consumer and Employee Rights Law Firm PC
751 A Thimble Shoals Blvd
Newport News, VA 23606
(757) 873-1010
Fax: (757) 873-8375
Email: wdowninglaw@aol.com

## Certificate of Service

This 24th day of October 2014, I certify that I filed the foregoing using the Court's CM/ECF system, which will serve the following attorneys of record by notice of electronic filing (NEF):

Taron Kato Murakami
Seyfarth Shaw LLP
975 F Street, NW
Washington, DC 20004-1454
202-463-2400
Fax: 202-828-5393
Email: tmurakami@seyfarth.com

Frederick Thomas Smith
Seyfarth Shaw LLP
1075 Peachtree St NE
Suite 2500
Atlanta, GA 30309-3962
(404) 885-1500
Fax: (404) 724-1521
Email: fsmith@seyfarth.com

Gerald L. Maatman , Jr.
Seyfarth Shaw LLP (IL-NA)
131 S Dearborn St
Suite 2400
Chicago, IL 60603-5577
312-460-5965
Fax: 312-460-7965
Email: gmaatman@seyfarth.com

Pamela Q Devata
Seyfarth Shaw LLP (IL-NA)
131 S Dearborn St
Suite 2400
Chicago, IL 60603-5577
(312) 460-5000
Fax: (312) 460-7882
Email: pdevata@seyfarth.com

Rebecca Suzanne Bjork
Seyfarth Shaw LLP
975 F Street NW
Washington, DC 20004-1454

(202) 828-5340
Fax: (202) 641-9219
Email: rbjork@seyfarth.com

_____/s/_____
Susan Mary Rotkis
VSB 40693
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com
