**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**TYRONE B. HENDERSON, SR.,**
**TERRELL MANUEL,**
**DAWN M. ROSALES,**
**CHARLES E. WHITE,**

*on behalf of themselves and*
*all others similarly situated,*

        **Plaintiffs,**

**v.**                            **Civil Action No.:  3:14-cv-00221**

**FIRST ADVANTAGE BACKGROUND**
**SERVICES, CORP.**

        **Defendant.**

**THIRD AMENDED CLASS ACTION COMPLAINT**

COME NOW the Plaintiffs, Tyrone B. Henderson, Sr., Terrell Manuel, Dawn. M. Rosales, and Charles E. White, on behalf of themselves and all others similarly situated, and for their Third Amended Class Action Complaint, state as follows:

**INTRODUCTION**

1.     Tyrone B. Henderson, Sr. (hereinafter "Henderson"), Terrell Manuel (hereinafter "Manuel"), Dawn M. Rosales (hereinafter "Rosales"), and Charles E. White (hereinafter "White") bring this class action against Defendant to obtain relief for themselves and the classes they propose to represent for violations of the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq.

2.     First Advantage Background Services Corp. (hereinafter "First Advantage") operates as a consumer reporting agency as defined by the Fair Credit Reporting Act.  First

1

Advantage compiles and maintains files on consumers on a nationwide basis.  It then sells this information as consumer reports to various customers who use the First Advantage reports to make employment decisions, including whether to hire, terminate, transfer or promote an employee or prospective employee, including the Plaintiffs and putative class members in this case.

3.       Prior to the filing of this action, the corporate parent of First Advantage purchased the criminal background division of a previous competitor, LexisNexis. Thereafter, the LexisNexis entity was merged with First Advantage.  Most of the redundant processes and operations of First Advantage were eliminated.  Those that remained were consolidated into a small office in Indiana and thereafter referred to as the "Red-side" (with the LexisNexis originated systems designated the "Blue-side").

4.       First Advantage's "Blue-side" is located in an office in Indiana and its remaining customers are serviced by a very small staff of roughly four employees.

5.       First Advantage has made a decision fatal to countless job applicants to match records, as broadly as it finds them though it does not obtain social security numbers or other necessary identifiers to avoid inevitable false positives.

6.       Henderson wrote to First Advantage and requested a copy of his complete file.  First Advantage did not provide a copy of his consumer file upon request.  Henderson also disputed incorrect information that he feared might be in his First Advantage consumer file.  First Advantage ignored Henderson, who brings his action on an individual basis.

7.       White alleges an individual claim under 15 U.S.C. §§ 168lc(a)(2) and (5) which excludes certain information from consumer reports. First Advantage prepared and

supplied a consumer report about White that included dismissed charges, as opposed to convictions, which were all more than seven years old.

8.      Manuel, Rosales and White also allege individual claims under 15 U.S.C. § 168le(b), which required that First Advantage use "reasonable procedures to assure maximum possible accuracy" in the preparation and publication of their consumer reports.

8.      Further, Manuel, Rosales and White each wrote to First Advantage and requested a copy of their complete consumer file and disputed specific incorrect information that they knew First Advantage had reported about them to prospective employers. Manuel, Rosales and White bring a class claim under 15 U.S.C. § 1681g(a).  When First Advantage did respond, it did not provide the actual "sources of the information" in its report.   Instead, it represented and disclosed only the underlying court or governmental agency from whom records were taken and then delivered to First Advantage by a different source – either as a Verisys report or a FBI "Rapsheet" (or "fingerprint report").

9.      Plaintiffs Manuel and Rosales also allege class claims under 15 U.S.C. § 1681i(a)(1)(A), which requires that First Advantage initiate a reinvestigation of its consumer file as soon as it is contacted directly by a consumer conveying a dispute.   First Advantage required class members to submit a copy of government-issued identification and complete First Advantage's proprietary forms and submit the disputes in writing before it would begin to process their disputes.

10.      Plaintiffs Manuel, Rosales and White also bring this class action pursuant to 15 U.S.C. § 1681k(a)(1), as First Advantage systematically fails to send legally mandated notices under this section "at the time" it furnishes its customer a consumer report containing a criminal "hit" for employment purposes.

**JURISDICTION AND VENUE**

11.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 168lp and 28 U.S.C. § 1331.   Venue is proper in this Court under 28 U.S.C. § 139l(b) as First Advantage regularly does business in the district and division.   First Advantage also maintains its registered agent for service of process in this district and division.   The events for two of the four named Plaintiffs occurred in the Eastern District of Virginia.

12.     Henderson and Manuel reside in the Eastern District of Virginia and maintain all of the documents relevant to this dispute at their homes.   Henderson resides in Richmond, Virginia. Manuel resides in Newport News, Virginia.

13.     Upon information and belief, First Advantage maintains documents relevant to this action in Richmond, Virginia.   To the extent the documents are not available in Richmond, they are available electronically and can be accessed in Richmond, Virginia.

**PARTIES**

14.     Plaintiffs are natural persons and "consumers" as that term is defined in the FCRA.

15.     First Advantage is a consumer reporting agency that regularly conducts business in the Eastern District of Virginia.

16.     First Advantage is, "a consumer reporting agency which [for the purpose of furnishing consumer reports] for employment purposes […] compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment[.]"  15 U.S.C. § 1681k(a).

**FACTS AS TO HENDERSON**

18.     Henderson had suffered a series of rejections for employment based on

inaccurate background checks furnished by multiple consumer reporting agencies.  He had sought legal advice, disputed those reports and even commenced litigation about them. Nevertheless, new reports continued to surface showing the inclusion of felony records for an out of state stranger with a similar name.

19.     As a result, Henderson attempted to determine and dispute the content of his consumer file with each major database that he discovered warehoused and sold criminal background checks.

20.     In April 2013 Henderson, after being advised by First Advantage that he had to complete a "request for a copy of consumer report" (form 122.96.9) and include a copy of his picture ID, submitted those documents to First Advantage.

21.     In addition, in that same correspondence, Henderson disputed inaccurate information (the inaccurate attribution of a Pennsylvania felony conviction of a similarly named stranger) that he believed First Advantage maintained in its file.

22.     In response, First Advantage wrote Henderson claiming that at the time it showed no record of his name and social security number in its database and no requests for his records by employers.

23.     Upon information and belief, First Advantage maintains a database that contains information about Henderson and every other consumer who has been linked to a criminal public record.

24.     Henderson was the correctly identified defendant in several minor matters in a Virginia General District Court.  And he shared the same first and last name and date of birth as a stranger in Pennsylvania who had been convicted of at least one felony.

25.     If an employer customer contacted First Advantage and requested a

consumer report regarding Henderson, First Advantage would access its existing National Criminal Records File database and use a matching rule of: "First and Last name, plus date of birth" to match records to Henderson's report.

26.    First Advantage never provided Henderson a copy of his consumer file.

27.    It is First Advantage's policy to refuse to provide a consumer disclosure pursuant to 15 U.S.C. § 1681g(a) if it has not previously furnished a consumer report regarding that consumer to a third party.

28.    As a result of First Advantage's actions, Henderson was deprived of his right to his complete file.

29.    Additionally, it is First Advantage's policy to refuse to conduct a consumer dispute pursuant to 15 U.S.C. § 1681i(a) if it has not previously furnished a consumer report regarding that consumer to a third party.

30.    As a result of First Advantage's actions, when First Advantage received Henderson's dispute, it refused to conduct any investigation.

## FACTS AS TO MANUEL

31.    In February 2012 Manuel applied for a job as a banker with Wells Fargo.

32.    Wells Fargo purchased a background check on Manuel from First Advantage, for an employment purpose on February 27, 2012.

34.    As with Rosales, White and each member of the putative classes, the Manuel consumer report was provided by First Advantage to a third party end-user, and not communicated among persons related by common ownership or affiliated by corporate control.

35.    As with the Rosales and White reports alleged herein, and the triggering

reports for each member of the putative classes, the Manuel consumer report was obtained from First Advantage by the user as a routine consumer report for employment purposes, and not in connection with *any investigation of* suspected misconduct relating to employment or *any investigation of* compliance with Federal, State or local laws and regulations, the rules of a self-regulatory organization, or any pre-existing written policies of the employer.

36.     Upon information and belief, First Advantage completed the consumer report on or about April 2, 2012 and immediately conveyed the information in the report to Wells Fargo.

37.     Despite the fact that the report contained derogatory public record information likely to have an adverse impact on Mr. Manuel's employment, First Advantage did not transmit this information to Plaintiff at the time that it supplied his consumer report to Wells Fargo.

38.     On or about April 3, 2012, the recruiter for Wells Fargo told Manuel that the report had been completed and the result disqualified Manuel for employment at Wells Fargo.

39.     The report provided by First Advantage contained numerous material errors. Specifically, it contained charges for a total stranger including, among other things, charges for making terroristic threats, theft, possession of burglar's tools, and threats to kill/domestic violence.

40.     In creating and furnishing Manuel's consumer report, Defendant violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to ensure the report was as accurate as maximally possible.  For example, First Advantage allowed and/or used very

loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Manuel's consumer report.

41.     First Advantage failed to provide Manuel with a letter or any other communication "at the time" it furnished his consumer report containing adverse public record information to Wells Fargo.

42.     First Advantage's internal procedure to attempt compliance with 15 U.S.C. § 1681k(a) (which it refers to as "Section 613") is to mail consumers the notice letter provided for at 15 U.S.C. § 1681k(a)(1) for all reports containing a "hit" in First Advantage's "National Criminal" records report.

43.     For First Advantage's "blue-side" (including pre-LexisNexis reports), the standard procedure to comply with "Section 613" and 15 U.S.C. § 1681k(a)(1) in such circumstances was to mail the required "at the time" notice the next business day after the triggering consumer report was furnished to First Advantage's customer.

44.     First Advantage did not mail or otherwise send Manual the 15 U.S.C. § 1681k(a)(1) notice "at the time" it furnished his report.

45.     Manuel also contacted First Advantage to dispute the consumer report it provided to Wells Fargo.

46.     In accordance with First Advantage's standard procedure before the LexisNexis merger and through July 1, 2014 for the First Advantage "Blue-side", First Advantage refused to process the dispute until Manuel completed First Advantage's proprietary form entitled "Notice of Consumer Dispute" and an "Authorization for Reinvestigation of Consumer Dispute."

47.     Manuel signed, completed and forwarded those forms to First Advantage.

48.     First Advantage did not respond to and complete Mr. Manual's dispute reinvestigation until after 30 days from when he first conveyed his dispute.

49.     First Advantage did not send to Manual, and for the First Advantage Blue-side and First Advantage generally prior to the LexisNexis merger, it systematically did not mail or otherwise send the notice provided at 15 U.S.C. § 1681i(a)(3).

50.     As a result of First Advantage's violation of 15 U.S.C. § 1681e(b), Mr. Manuel suffered economic and non-economic actual damages including but not limited to loss of employment, embarrassment, damage to his reputation, inconvenience, anxiety, and humiliation.

## FACTS AS TO ROSALES

51.     In January 2013 Rosales applied for a job as a pharmacist with CVS. On February 8, 2013, CVS offered Rosales a job.

52.     On or prior to February 25, 2013, First Advantage furnished an employment-purpose consumer report regarding Rosales to CVS.

53.     The consumer report furnished by First Advantage regarding Rosales contained derogatory information about public records contained in the Florida Department of Health and/or other agencies that purportedly regarded Ms. Rosales.

54.     On February 25, 2013, CVS telephoned Rosales and asked if she failed to disclose information on her application.  Rosales said "no." CVS informed Rosales that there was a "hit" on her background report, and that CVS would no longer hire her.

55.    On or about February 26, 2013, CVS informed Rosales that it had a "summary" of her report provided by First Advantage and that she had failed a Fraud and Abuse (FACIS) inquiry provided to First Advantage by another consumer reporting agency.

56.    First Advantage followed the same standard procedures as alleged herein for Mr. Manuel and failed to provide Rosales with a letter in accordance with 15 U.S.C. § 1681k(a)(1) or any other communication "at the time" her consumer report was furnished to CVS.

57.    On information and belief, Plaintiffs allege that First Advantage purchases the FACIS information from a private third party, either Verisys or another intermediary. First Advantage does not obtain the information in the FACIS section of its reports or consumer disclosures directly from any governmental agency.

58.    The FACIS portion of the report contained information regarding a complete stranger, who was an individual named Dawn Michelle Johnson, a certified nursing assistant, who had a derogatory employment citation issued by the Florida Department of Health.

59.    In creating and furnishing Rosales' consumer report, Defendant violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to ensure the report was as accurate as maximally possible.  For example, First Advantage allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Rosales' consumer report.  Other than sharing Rosales' first, middle and maiden name, there were no matching criteria (address, date of birth, social security number, etc.) that would reasonably link Rosales to Johnson.

10

61.     After she was denied employment by CVS, Rosales made a written request to First Advantage to obtain a copy of her file. In accordance with First Advantage's standard procedures, the consumer disclosure First Advantage provided to Rosales after she requested a copy of her file did not contain the actual sources that had provided components of information in the report to First Advantage.  Specifically, First Advantage inaccurately identified the Florida Department of Health as the source rather than Verisys or the actual sources of the FACIS information.

62.     Upon receipt of the consumer report, Rosales also made a written dispute and initiated a reinvestigation with First Advantage.

63.     First Advantage followed the same procedures as alleged as to Manuel and refused to process the written dispute until Rosales completed First Advantage's proprietary forms in violation of 15 U.S.C. §1681i.

64.     As a result of First Advantage's violation of 15 U.S.C. § 1681e(b), Rosales suffered economic and non-economic actual damages including but not limited to loss of employment, embarrassment, damage to her reputation, inconvenience, anxiety, and humiliation.

## FACTS AS TO WHITE

65.     Wells Fargo hired White in 2008 where he worked for four years before Wells Fargo transferred him to its mortgage department in February 2012.

66.     In connection with the transfer from one Wells Fargo department to another, Wells Fargo required White to submit his fingerprints and to again authorize a consumer report.

11

67.     First Advantage prepared a consumer report on White dated March 16, 2012, which it delivered immediately to Wells Fargo.

68.     White met with his Wells Fargo HR department on or about March 21, 2012, and for the first time learned that his First Advantage consumer report revealed felony charges, which caused White to not only be turned down for the new position, but to be discharged immediately.

69.     The First Advantage consumer report contained three felony charges that had been dismissed more than seven years before the date of the report (August 1994 versus March 2012).  By reporting those felony charges to Wells Fargo, First Advantage violated 15 U.S.C. § 1681c of the FCRA.

70.     Further, court records from Maricopa County, Arizona confirmed that there were not two felony charges that were reduced to misdemeanors, but rather one. First Advantage's failure to implement and follow procedures reasonably designed to process and accurately report otherwise uncertain public records data violated 15 U.S.C. § 1681e(b).

71.     First Advantage followed the same standard procedures as alleged herein for Manuel and Rosales, and failed to provide White with a letter in accordance with 15 U.S.C. § 1681k(a)(1) or any other communication "at the time" his consumer report was furnished to Wells Fargo.

72.     By the time White received any communication from First Advantage he had already been discharged by Wells Fargo and walked off its business premises because of the contents of the report.

73.     On March 28, 2012, White faxed written disputes regarding the consumer report to First Advantage. The dispute also included additional forms required by First

Advantage that White signed, plus a copy of White's criminal record as published by the United States Department of Justice, Federal Bureau of Investigation demonstrating that there were not two felony charges that were reduced to misdemeanors, but rather one, SID-AZ10069742. White also included court records from Maricopa County confirming that he had one conviction for burglary in the third degree, a class six offense designated as a misdemeanor.

74.     By letter dated April 6, 2012, First Advantage told White that it had completed its reinvestigation of the information White disputed in his consumer report.  The letter did not provide a copy of either the original consumer report or a revised consumer report.  Instead, the letter mysteriously referred to fingerprints and said "if the outcome of the reinvestigation did not resolve" the dispute, White could contact the furnisher of the information, the Maricopa, AZ Superior Court, at the telephone number First Advantage provided.  White knew there was nothing wrong with the records provided by the Arizona Superior Court, and he gave up.

75.     White did not then know of the nature and substance of First Advantage's procedures necessary to understand whether or not they would violate the FCRA.

76.     In January 2014, White again sent a letter to First Advantage requesting a copy of his entire file and disputing inaccurate information in his consumer file.

77.     In response, on February 25, February 27 and March 13, 2014, First Advantage sent White with requests for his identifying information and blank forms to complete, but did not provide him a corrected consumer disclosure or any disclosure at all.

78.     White had already complied with all of First Advantage's requirements in March 2012.

79.     The consumer report First Advantage ultimately provided to White after he requested a copy of his file did not identify the actual sources and all of the sources who had provided components of information in the report to First Advantage.  Instead, it credited to the actual courthouse clerks supposed affirmative reporting of information that First Advantage had actually received only indirectly from the FBI.

80.     As a result of First Advantage's violation of 15 U.S.C. §§ 1681c and 1681e(b), Mr. White suffered economic and non-economic actual damages including but not limited to loss of employment, embarrassment, damage to his reputation, inconvenience, anxiety, and humiliation.

## COMMON FACTS DEMONSTRATING WILLFUL VIOLATIONS

81.     In early 2013, First Advantage's parent company acquired LexisNexis Risk Solutions' screening business through a transaction with First Advantage's parent, private equity firm Symphony Technology Group.

82.     Further, even before that change, in approximately 2008, LexisNexis had merged with another consumer reporting agency, ChoicePoint, and its corporate notice, knowledge, systems and data have remained integrated within First Advantage.

83.     The LexisNexis and previous ChoicePoint entities were fully incorporated into First Advantage, and brought with it all of the institutional knowledge and notice previously acquired.

84.     In 2008, LexisNexis lost summary judgment as to FCRA willfulness and contested class certification in a nearly identical earlier class action lawsuit, *Williams v. LexisNexis Risk Management, Inc.*, No.3:06-cv-00241-REP (E.D.Va.), for the very conduct

alleged in this case relating to its onerous reinvestigation process (requiring use of written forms and the inclusion of government-issued identification).

85.     The relevant §1681i(a) class definition in *Williams* was:

> All natural persons residing in the United States who were the subject of a consumer report prepared by Defendant within 2 years prior to the filing of this complaint for whom Defendant refused to conduct a reinvestigation of a dispute until and unless the consumer provided with his or her dispute photocopies of two forms of identification.

86.     Similarly, this Court certified against First Advantage (as LexisNexis) a 15 U.S.C. §1681k(a)(1) class as follows:

> All natural persons residing in the United States who were the subject of a consumer report furnished by Defendant for employment purposes and which for that purpose compiled and reported items of information on consumers which were matters of public record and were likely to have an adverse effect upon a consumer's ability to obtain employment, within 2 years prior to the filing of this complaint, and to whom Defendant did not provide notice that it was furnishing a consumer report on them prior to or contemporaneously with its provision of the report.

87.     In fact, LexisNexis paid a substantial amount of each consumer in these classes, especially to those who had prosecuted the comparable 15 U.S.C. § 1681i(a) claim, who each received $1,000 without the need to file a claim, and net of attorneys' fees.

88.     The same week that LexisNexis announced its merger-purchase of ChoicePoint, the companies caused the settlement of a class action regarding the same business process used by then ChoicePoint and present LexisNexis.  The case was pending in this Court, but then transferred to the Eastern District of Virginia for consolidation with the employer case, which had also settled.  *Beverly v. ChoicePoint, Inc.,* CIV.A. 3:08-cv-59 (W.D.N.C.)

89.     As in *Williams*, the claim against ChoicePoint in *Beverly* alleged that the entity did not provide the §1681k(a)(1) notice "at the time" it furnished its customers employment reports. *Beverly* settled for approximately $4 million.

90.     In addition, there have been multiple other decisions and class action cases brought and settled against Defendant's industry competitors and First Advantage was aware of nearly all of these.

91.     Because of these earlier lawsuits, First Advantage knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

92.     First Advantage also obtained or had available substantial written materials that apprised it of its duties under the FCRA.

93.     Despite knowing of these legal obligations, First Advantage acted consciously in breaching its known duties and deprived Plaintiffs and other members of the Classes of their rights under the FCRA.

94.     The conduct, action, and inaction of Defendant was uniform, as intended and followed without a reasonable consideration of the risks that First Advantage may have violated the FCRA.  Further, Defendant has not alleged and offers no proffer that it has even made any effort to determine the objectively reasonable boundaries of the statute.   Its conduct was reckless, rendering Defendant liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95.     Upon furnishing a consumer report, First Advantage (Blue-side and legacy) does not send (mail) consumers the 15 U.S.C. § 1681k(a)(1) notice until the next day after it

16

has furnished the subject report to its employer customer.  Further, it does not send the notice at all unless it furnishes its report based only on its pre-existing database.

96.     Upon written request by a consumer, First Advantage (Blue-side and legacy) does not provide the consumer with his or her consumer disclosure file unless it has provided a report about the consumer to a customer, regardless of whether it maintains information about that consumer in its files.

97.     Upon written dispute by a consumer, First Advantage (Blue-side and legacy) follows a procedure for processing and responding to consumer disputes that does not comply with 15 U.S.C. § 1681i.  First Advantage has a policy of forcing consumers to make cumbersome and delayed written disputes using its proprietary forms and providing documentation otherwise not required by the FCRA.

98.     Upon written dispute by a consumer, First Advantage (Blue-side and legacy) does not commence the dispute investigation (reinvestigation) until and unless (1) it has provided a report about the consumer to a customer; (2) the consumer has filled out special paperwork required by First Advantage such as "Notice of Consumer Dispute" and "Authorization for Reinvestigation of Consumer Dispute"; and (3) the consumer has provided a copy of a government-issued identification.

99.     First Advantage does not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires the consumer reporting agency to actually contact the original source of the public record information (e.g. the Court clerk) immediately prior to furnishing a report that includes derogatory public record information, and applies only when First Advantage can and does have procedures in place *a priori* (before a report is ever requested) to obtain and report the complete public record; thus 15

U.S.C. § 1681k(a)(2) is inapplicable.

100.    First Advantage obtains its information from third-party vendors and sources, which it does not identify or disclose to consumers when it provides a copy of their file pursuant to 15 U.S.C. § 1681g(a)(1).

101.    First Advantage follows a uniform policy to withhold from consumers in response to their disclosure requests and disputes the fact that First Advantage actually obtains its FACIS data only from Verisys and not from state agencies, and that it never receives any of the FBI Rapsheet/fingerprint report records from state court clerks and related state agencies.

**CLAIMS FOR RELIEF**
**Count I- Violation of 15 U.S.C. § 1681c(a)(2) and (5)**
**(Individual Claim)**
**(Plaintiff White)**

102.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

103.    During the period permitted by 15 U.S.C. § 1681p and since White learned of the violation, First Advantage reported criminal history information (other than criminal conviction) in consumer reports regarding White that pre-dated the report by more than seven years.

104.    Defendant's conduct violated 15 U.S.C. § 1681c(a)(2) when it reported arrest and non-conviction records that antedated the report by more than seven years or the applicable statute of limitations, whichever is longer.

105.    Defendant's conduct, action and inaction were willful and/or reckless, rendering First Advantage liable for actual and/or statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

106.    In the alternative, First Advantage's conduct, action and inaction was negligent, rendering First Advantage liable pursuant to 15 U.S.C. § 1681o.

107.    White is entitled to recovery of costs and attorney's fees in a manner and amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n & 1681o.

### Count II- Violation of 15 U.S.C. § 1681g(a)
### Individual and Class Action Claim
### (All Plaintiffs)

108.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

109.    Plaintiff Henderson alleges an individual claim under 15 U.S.C. § 1681g(a) because First Advantage refused to provide a consumer file disclosure when he wrote and requested same, even though it maintained records that it would otherwise match to his report if requested by a third party user.

110.    The FCRA obligates CRAs like First Advantage to furnish to a requesting consumer "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(2).

111.    In addition to the employment-related information that First Advantage provides third parties, First Advantage obtains and furnishes records within its reports from sources that it does not identify within its consumer disclosure in violation of 15 U.S.C. § 1681g(a)(2).

19

112.    In particular, First Advantage buys healthcare employment, sanctions and licensing data from a third party source, Verisys.   However, First Advantage then falsely represents that the only source of the records and information Verisys provides was the government agency or department about whom the data was reported to First Advantage. Verisys itself explains that it is the actual source (and certainly **_a_** source) of this information:

> Verisys is the largest single provider of objective primary source health care data to the health care industry directly and the health care screening industry as a data supplier. Verisys resells its content to approximately 85% of the background screening market. [1]
>
> Verisys is simply the best objective source of data on health care providers available. Verisys gathers data from thousands of sources: We seek out primary source data.[2]

113.    Similarly, First Advantage buys reports from the FBI (or other yet undisclosed intermediaries) that identify criminal public records that the FBI (or intermediaries) ostensibly obtained or received from various state or federal courts or authorities.   These records are colloquially referred to by First Advantage as the FBI "Rapsheet" or "fingerprint report" and formally known as an FBI Identity History Summary.

114.    In fact, the record in the "FBI Rapsheet" (or by First Advantage, a "Fingerprint report") can be disputed directly to the FBI.  Its instructions provide:

> **Option 2**: Send a written challenge request to the FBI's CJIS Division. Your written request should clearly identify the information that you feel is inaccurate or incomplete and should include copies of any available proof or supporting documentation to substantiate your claim. For example, if your disposition information is incorrect or missing, you may submit documentation obtained from the court having jurisdiction over the arrest or the office prosecuting the offense. The FBI will contact appropriate agencies

---

[1] www.state.wv.us/admin/purchase/bids/FY2013/B_INS13004_04.pdf last visited March 2,
[2] https://www.verisys.com/Secure_Pages/Verisys-Products.aspx last visited March 2, 2015.

in an attempt to verify or correct challenged entries for you. Upon receipt of
an official communication from the agency with jurisdiction over the data,
the FBI will make appropriate changes and notify you of the outcome.

You may submit an Identity History Summary challenge to the FBI's CJIS
Division by writing to the following address:

FBI CJIS Division
Attention: Criminal History Analysis Team 1
1000 Custer Hollow Road
Clarksburg, WV 26306.

115.    Plaintiffs Manual and White bring this action on behalf of the following

"1681g(a)(1) FBI Class":

> All persons residing in the United State of America and its
> Territories (a) who requested information in their consumer
> file (regardless of whether they used a word "file," "report" or
> some other term indicating that the consumer was seeking
> from Defendant information about himself or herself), (b)
> within two years preceding the filing of this Complaint and
> continuing through the conclusion of this action, (c) where
> First Advantage included in the response to such request the
> identification of a state court or agency as the source of
> information for one or more criminal records where those
> records were in fact provided to Defendant by the FBI or
> through an intermediary's delivery of an FBI report.
>
> Excluded from the class definition are any employees,
> officers, and directors of Defendant, any attorney appearing in
> this case and any Judge assigned to hear this action as well as
> any consumer who is a member of a previous settlement class
> or who executed an individual settlement agreement releasing
> Defendant.

116.    Plaintiff Rosales brings this action on behalf of the following "1681g(a)(1)

Verisys Class":

> All persons residing in the United State of America and its
> Territories (a) who requested information in their consumer
> file (regardless of whether they used a word "file," "report" or
> some other term indicating that the consumer was seeking
> from Defendant information about himself or herself), (b)

within two years preceding the filing of this Complaint and continuing through the conclusion of this action, (c) where First Advantage included in the response to such request the identification of a state or federal agency as the source of information for one or more records where those records were in fact provided to Defendant by Verisys or through an intermediary's delivery of a Verisys report.

Excluded from the class definition are any employees, officers, and directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing Defendant.

117.    **Numerosity**.    Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of each Class are so numerous that joinder of all is impractical.  The names and addresses of members of each class are identifiable through documents maintained by Defendant and members of each class may be notified of the pendency of this action by published and/or mailed notice.

118.    **Existence and Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of each class. Without limitation, the focus of the allegations on behalf of each class is the uniform conduct and procedures and whether First Advantage failed and refused to provide consumers with a copy of their complete consumer files upon a consumer's lawful request. This question predominates over questions affecting only individual members. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

119    **Typicality**.    Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the members of each class. Plaintiffs are entitled to relief under the same cause of

action as the other members of each class.   As go the claims of the individual Plaintiffs, so goes each class.  There are no material differences in the law or material facts for the claim of the Plaintiffs from that of each class.  Without limitation, the procedures of Defendant give rise to the causes of action and were uniform and systemic. Defendant's refusal to provide consumers with their full file upon a lawful request was uniform and typical of the facts for each member of each class.  Defendant's refusal to provide consumers with the summary of rights required by 15 U.S.C. §§ 1681g(c)(2) was uniform and typical of the facts for each member of each class.

120.  **Adequacy**.  Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of each class because their interests coincide with, and are not antagonistic to, the interests of the members of each class they seeks to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of members of each class will be fairly and adequately protected by Plaintiffs and their counsel.

121.  **Superiority**.  Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to each class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct.  It would be virtually impossible for the members of each class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendant has violated the FCRA, very few Class members-and almost none who are unrepresented by counsel-will ever know that where First Advantage actually obtains the

information it reports about them.  Even if the members of each Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

122.    First Advantage violated 15 U.S.C. §1681g(a)(2) as to the two putative classes in systematically failing to accurately and fully (and at all) provide and disclose the sources of the information in class member files and reports.

123.    First Advantage's conduct, action and inaction were willful and/or reckless, rendering First Advantage liable for statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

124.    Plaintiffs and other members of the putative class are entitled to recover costs and attorney's fees, as well as appropriate injunctive relief from Defendant, in a manner and amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n & 1681o.

**Count III- Violation of 15 U.S.C. § 168li - The "1681i(a)(1) Class"**
**Individual and Class Action Claim**
**(Plaintiffs Henderson, Manuel, and Rosales)**

125.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

126.    The FCRA mandates that CRAs conduct a free, reasonable reinvestigation to determine the accuracy of information that a consumer disputes as incomplete or inaccurate.

24

15 U.S.C. § 1681i(a)(l)(A). The CRA may not impose any additional obstacles not provided in the FCRA.

127.    Plaintiffs disputed the accuracy of information contained in their First Advantage reports and/or files, and First Advantage failed each time to commence the reinvestigation until and unless the consumer first made that dispute in writing and using its own form.

128.    Plaintiff Henderson alleges an individual claim under 15 U.S.C. § 1681i(a) because First Advantage refused to conduct any investigation when he wrote and requested same, even though it maintained records that it would otherwise match to his report if requested by a third party user.

129.    Plaintiffs Manuel and Rosales bring this action on behalf of themselves and all other similarly situated consumers for following class (the "§1681i(a)(1) Class"), of which they are members:

> All persons residing in the United States (including all territories and other political subdivisions of the United States) who First Advantage's records show, (a) contacted First Advantage to make a dispute within the two years that preceded the filing of this action and prior to July 1, 2014, (b) for which First Advantage refused to start an investigation because the consumer had not provided a copy of a government-issued ID and completed First Advantage's specific dispute form and/or otherwise took longer than 30 days to complete and respond to the dispute from the date of last contact from the consumer.
>
> Excluded from the class definition are any employees, officers, and directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing Defendant.

130.   **Numerosity**.  Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.   The names and addresses of members of the Class are identifiable through documents maintained by Defendant and members of the Class may be notified   of the pendency   of this action   by published and/or mailed notice.

131.   **Existence and Predominance of Common Questions of Law and Fact**. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. Without limitation, the focus of the allegations on behalf of the class is the uniform conduct and procedures and whether First Advantage failed and refused to conduct a reasonable reinvestigation of information disputed by the consumer. This question predominates over questions affecting only individual members. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

132.   **Typicality**.   Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same cause of action as the other members of the Class.   As go the claims of the individual Plaintiff, so goes the class.   There are no material differences in the law or material facts for the claim of the Plaintiffs from that of the class.   Without limitation, Defendant's procedures give rise to the causes of action and were uniform and systemic.   Defendant's refusal to conduct reasonable reinvestigations upon receipt of a consumer dispute as required by 15 U.S.C. § 1681i(a)(1) was uniform and typical of the facts for each member of the Class.

133.   **Adequacy**.   Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of

the members of the Class he seeks to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

134.    **Superiority**.  Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendant has violated the FCRA, very few Class members - and almost none who are unrepresented by counsel - will ever know that Defendant violated the FCRA by, among other things, requiring consumers to fill out proprietary forms before it would conduct a reinvestigation or that it is required to remove inaccurate information or information that cannot be verified. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts.   Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proofs in a case.

135.    First Advantage violated §1681i(a) as to each class member and Plaintiffs.

27

136.     First Advantage's conduct, action and inaction were willful and/or reckless, rendering Defendant liable for statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

137.     Plaintiffs and other members of the putative class are entitled to recover costs and attorney's fees, as well as appropriate injunctive relief from Defendant, in a manner and amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n & 1681o.

### Count III- Violations of 15 U.S.C. § 1681k- The "1681k Class"
### Class Action Claim
### (Plaintiffs Manuel, Rosales and White)

138.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

139.     Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon his ability to obtain or maintain employment, First Advantage failed to provide notice of this fact "at the time" the public record information was being reported by it, together with the name and address of the person to whom such information was being reported.

140.     Upon information and belief, First Advantage (blue-side and legacy) did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court Clerk) immediately before furnishing a report which includes such information. Further, it would require the pre-existing maintenance and design of strict procedures to ensure that First Advantage only reported public records for which it could and did obtain and report the complete public record.   It never did this for this class

or most consumers generally.   Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

141.    Manuel, Rosales and White bring this action on behalf of the following Class, of which they are members:

> All natural persons residing within the United States and its Territories who (a) were the subject of a report containing a public record search sold to a third party within two years preceding the filing of this action and through its conclusion, (b) by First Advantage generally if prior to May 1, 2013, and/or by First Advantage's Indiana office or "Blue-side" if after May 1, 2013, (c) that was furnished for an employment purpose, (d) that contained at least one adverse criminal public record of an arrest, indictment, or conviction or an adverse FACIS disciplinary action or sanction, where First Advantage's report of that record did not contain a partial or full social security number, (e) which search was not furnished from a First Advantage pre-existing records database and (f) to whom First Advantage did not place in the United States mail postage pre-paid, on the day it furnished any part of the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.
>
> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case and any Judge assigned to hear this action as well as any consumer who is a member of a previous settlement class or who executed an individual settlement agreement releasing Defendant.

142.    **Numerosity**.  Fed. R. Civ. P. 23(a)(l). Upon information and belief, Plaintiffs allege that the members of the Class are so numerous that joinder of all is impractical.   The names and addresses of members of the Class are identifiable through documents maintained by First Advantage and members of the Class may be notified of the pendency of this action by published and/or mailed notice.

143.    **Existence and Predominance of Common Questions of Law and Fact**.

Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. Without limitation, the focus of the allegations on behalf of the class is the uniform conduct and procedures and whether First Advantage failed to send consumers the notice required under section 1681k(a)(1). This question predominates over questions affecting only individual members. Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

144.   **Typicality**.   Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs are entitled to relief under the same cause of action as the other members of the Class.   As go the claims of the individual Plaintiffs, so goes the Class.   There are no material differences in the law or material facts for the claim of the Plaintiffs from that of the Class.   Without limitation, the procedures of Defendant give rise to the causes of action and were uniform and systemic. First Advantage's refusal to send the notices required by 15 U.S.C. § 1681k(a)(1) was uniform and typical of the facts for each member of the Class.

145.   **Adequacy**.   Fed. R. Civ. P. 23(a)(4). Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class they seek to represent, they have retained counsel competent and experienced in such litigation, and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

146.   **Superiority**.   Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove

burdensome and expensive given the complex and extensive litigation necessitated by First Advantage's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. In fact, because of the manner in which Defendant has violated the FCRA, very few Class members - and almost none who are unrepresented by counsel - will ever know that Defendant violated the FCRA by, among other things, failing to send them a notice at the time it supplied a consumer report that contained a derogatory public record likely to have an adverse impact on the ability to obtain employment. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

147.   First Advantage is liable for willfully violating 15 U.S.C. § 1681k(a) by failing to notify consumers "at the time" (i.e. contemporaneously) of the fact that adverse public criminal record information is being provided to employers or prospective employers.

148.   First Advantage's failure to timely provide the required FCRA notices to Plaintiffs and other members of the putative class violated 15 U.S.C. § 1681k(a).

149.    First Advantage's conduct, action and inaction were willful and/or reckless, rendering Defendant liable for statutory damages and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

150.    Plaintiffs and other members of the putative class are entitled to recovery of costs and attorney's fees, as well as appropriate injunctive relief from First Advantage, in a manner and amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n & 1681o.

**Count V- Violations of 15 U.S.C. § 1681e(b)**
**Individual Claims**
**(Plaintiffs Manuel, Rosales and White)**

151.    Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth fully herein.

152.    Manuel's, Rosales' and White's First Advantage reports each contained inaccurate information, and that inaccurate information contributed to their potential employers taking an adverse action against them.

153.    First Advantage violated 15 U.S.C. § 1681e(b) as to Manuel, Rosales and White by its failure to establish, follow and use reasonable procedures to ensure that their consumer reports were maximally accurate.

154.    As a result of this conduct by First Advantage, Manuel, Rosales and White suffered actual damages, including without limitation, by example only, and as described herein on their behalf by counsel: loss of employment, loss of income and equity, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

155.    First Advantage's violations of 15 U.S.C. § 1681e(b) were willful and/or reckless, rendering First Advantage liable pursuant to 15 U.S.C. § 1681n.  In the alternative, First Advantage was negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

156.    Plaintiffs are entitled to recover actual and/or statutory damages, punitive damages, costs and attorney's fees from First Advantage in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and § 1681o.

WHEREFORE, Plaintiffs respectfully pray for relief against First Advantage as follows:

a.      An order certifying the proposed classes set forth above under Federal Rule of Civil Procedure 23, and appointing Plaintiffs and the undersigned Counsel of Record to represent those classes;

b.      That judgment be entered for Plaintiffs as alleged herein individually against Defendant for actual and/or statutory damages and punitive damages for Defendant's violations pursuant to §§ 1681n & 1681o;

c.      The creation of a common fund available to provide notice and remedy for the proposed classes set forth above;

d.      That judgment be entered for the classes against Defendant for statutory and punitive damages based on Defendant's violations as alleged herein;

e.      Appropriate injunctive and declaratory relief that Defendant violated the FCRA;

f.      Attorneys' fees, expenses, and costs provided by 15 U.S.C §§ 1681n & 1681o;

g.       Pre-judgment and post-judgment interest as provided by law; and

h.      All other relief the Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.**

Respectfully submitted,

**TYRONE B. HENDERSON, TERRELL MANUEL, DAWN M. ROSALES, and CHARLES E. WHITE, on behalf of themselves and all others similarly situated,**

_____/s/_____
Susan Mary Rotkis
VSB 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: srotkis@clalegal.com

Leonard A. Bennett
VSB 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J Clyde Morris Blvd., Suite 1A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 - Facsimile
Email:  lenbennett@clalegal.com

Christopher Colt North
William Leonard Downing
The Consumer and Employee Rights Law Firm PC
751-A Thimble Shoals Blvd.
Newport News, VA 23606
(757) 873-1010 - Telephone
Email: cnorthlaw@aol.com
Email: wdowninglaw@aol.com

Anthony R. Pecora
Matthew Anderson Dooley
O'Toole McLaughlin Dooley & Pecora Co., LPA
5455 Detroit Rd
Sheffield Village, OH 44054
440-930-4017
Fax: 440-934-7208
Email: apecora@sheffieldlaw.com
Email: mdooley@omdplaw.com

## CERTIFICATE OF SERVICE

This 19th day of March 2015, I certify that I filed the foregoing using the Court's CM/ECF system, which will serve the following attorneys of record by notice of electronic filing (ECF):

Taron Kato Murakami
Seyfarth Shaw LLP
975 F Street, NW
Washington, DC 20004-1454
202-463-2400
Fax: 202-828-5393
Email: tmurakami@seyfarth.com

Frederick Thomas Smith
Seyfarth Shaw LLP
1075 Peachtree St NE
Suite 2500
Atlanta, GA 30309-3962
(404) 885-1500
Fax: (404) 724-1521
Email: fsmith@seyfarth.com

Gerald L. Maatman , Jr.
Seyfarth Shaw LLP (IL-NA)
131 S Dearborn St
Suite 2400
Chicago, IL 60603-5577
312-460-5965
Fax: 312-460-7965
Email: gmaatman@seyfarth.com

Pamela Q Devata
Seyfarth Shaw LLP (IL-NA)
131 S Dearborn St
Suite 2400
Chicago, IL 60603-5577
(312) 460-5000
Fax: (312) 460-7882
Email: pdevata@seyfarth.com

Rebecca Suzanne Bjork
Seyfarth Shaw LLP
975 F Street NW
Washington, DC 20004-1454
(202) 828-5340
Fax: (202) 641-9219
Email: rbjork@seyfarth.com

       /s/

       Susan Mary Rotkis
       VSB 40693
       CONSUMER LITIGATION ASSOCIATES, P.C.
       763 J Clyde Morris Blvd., Suite 1A
       Newport News, VA 23601
       (757) 930-3660 – Telephone
       (757) 930-3662 - Facsimile
       Email: srotkis@clalegal.com